# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Caption:

Jordan T. Breslow (Pro se)

_____

_____

*Full name(s) of Plaintiff(s)*

**COMPLAINT**
**FOR EMPLOYMENT**
**DISCRIMINATION**

v.

**CIVIL ACTION**
**NO._____**

Aloysius E. Gleeson, Tope Lala,
Geoff Mirkin, William McColley,
Solar Energy World, LLC, & Sunrun Inc.

*Full name(s) of Defendant(s)*

This action is brought for discrimination in employment pursuant to (check only those that apply):

**X**    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to
2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first
obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

_____    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621-634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination
in Employment Act, you must first file a charge with the Equal Employment
Opportunity Commission, and you must have been at least 40 years old at the time
you believe that you were discriminated against.*

**X**    Americans with Disability Act of 1990, as codified, 42 U.S.C. §§ 12112-12117.
*NOTE: In order to bring suit in federal district court under the Americans with
Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal
Employment Opportunity Commission.*

_____    Pennsylvania Human Relations Act, as codified, 43 Pa. Cons. Stat. §§ 951-963
(race, color, family status, religious creed, ancestry, handicap or disability, age,
sex, national origin, the use of a guide or support animal because of blindness,
deafness or physical handicap of the user or because the user is a handler or trainer
of support or guide animals).

(Rev. 10/2009)

**NOTE:** *In order to bring suit in federal district court under the Pennsylvania Human Relations Act, you must first file a complaint with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations, and then you must wait one year prior to filing a lawsuit.*

**I.      Parties in this complaint:**

A.      List your name, address and telephone number.   Do the same for any additional plaintiffs named.   Attach additional sheets of paper as necessary.

Plaintiff      Name: _Jordan T. Breslow_
          Street Address: _314 S. Henderson Rd, # 6703_
          County, City: _Montgomery County, King of Prussia_
          State & Zip: _Pa, 19406_
          Telephone Number: _(215) 206-3562_

B.      List all defendants' names and the address where each defendant may be served.   Make sure that the defendant(s) listed below are identical to those contained in the caption on the first page.   Attach additional sheets of paper as necessary.

Defendant      Name: _____
          Street Address: ____ _See Attached_ _____
          County, City: _____
          State & Zip: _____
          Telephone Number: _____

C.      The address at which I sought employment or was employed by the defendant(s) is:

          Employer: _____
          Street Address: _____
          County, City: _____
          State & Zip: _____
          Telephone Number: _____

**II.     Statement of the Claim**

A.      The discriminatory conduct of which I complain in this action includes (*check only those that apply to your case*):

          _____   Failure to hire me

          __X__   Termination of my employment

          _____   Failure to promote me

-2-

X̸ Failure to reasonably accommodate my disability

X̸ Failure to reasonably accommodate my religion

X̸ Failure to stop harassment

___ Unequal terms and conditions of my employment

X̸ Retaliation

___ Other (*specify*):_____

**NOTE:** *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

B.    It is my best recollection that the alleged discriminatory acts occurred or began on or about: (month) _April_ , (day) _1st_ , (year) _2021_ .

C.    I believe that the defendant(s) (check one):

   X̸  is still committing these acts against me.
   ___ is **not** still committing these acts against me.

D.    Defendant(s) discriminated against me based on my (*check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged*):

   ___ race _____          ___ color _____
   X̸ religion _Judiasm_              ___ gender/sex _____
   ___ national origin _____
   ___ age    My date of birth is _____ (*Give your date of birth only if you are asserting a claim of age discrimination*)

E.    The facts of my case are as follow (*attach additional sheets of paper as necessary*):

   _____See attachment_____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

-3-

**NOTE:** *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the Pennsylvania Human Relations Commission, or the Philadelphia Commission on Human Relations.*

**III.    Exhaustion of Administrative Remedies:**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on: _____ *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue Letter.

_X_    issued a Notice of Right to Sue Letter, which I received on __16/19/2021__*(Date)*.

**NOTE:** *Attach to this complaint a copy of the Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

C.    *Only plaintiffs alleging age discrimination must answer this question.*

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have passed.
_____    fewer than 60 days have passed.

D.    It is my best recollection that I filed a charge with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct on: _____ *(Date)*.

E.    Since filing my charge of discrimination with the Pennsylvania Human Relations Commission or the Philadelphia Commission on Human Relations regarding the defendant's alleged discriminatory conduct *(check one)*:

_____    One year or more has passed.
_____    Less than one year has passed.

**IV.    Relief**

**WHEREFORE,** Plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs as well as (*check only those that apply*):

_____   Direct the defendant to hire the plaintiff.

_____   Direct the defendant to re-employ the plaintiff.

_____   Direct the defendant to promote the plaintiff.

_____   Direct the defendant to reasonably accommodate the plaintiff's disabilities.

_____   Direct the defendant to reasonably accommodate the plaintiff's religion.

_____   Direct the defendant to (*specify*):_____

X   If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

_____   Other (*specify*):_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 20th day of October, 2021.

Signature of Plaintiff    JB (Pro Se)
Address    314 S. Henderson Rd
           #620
           King of Prussia, Pa. 19406

Telephone number   (215) 206-3562
Fax number (*if you have one*)   _____

-5-

*Defendants*

Aloysius E. Gleeson

13006 Twelve Hills Road

Clarksville, MD 21029


Tope Lala

13003 Twelve Trees Court

Clarksville, MD 21029


Geoff Mirkin

930 Rockborn Street

Gaithersburg, MD 20878


William McColley

1050 N Hancock St

Apt 234

Philadelphia, PA 19123


Solar Energy World, LLC

5681 Main Street

Elkridge, MD 21075


Sunrun Inc.

595 Market Street,

29th Floor

San Francisco, CA 94105

Jordan T. Breslow

v.

Aloysius E. Gleeson, Tope Lala, Geoff Mirkin, William McColley, Solar Energy World
LLC, & Sunrun Inc.

**Case Summary:**

As the attached exhibits make plain, I was the victim of a hostile work environment and
discrimination based upon my religion and my disability. This came directly from my supervisor,
Mr. William McColley. I sought EEOC protections after I felt my work environment was not
safe for me to return, Solar Energy World LLC subsequently retaliated against me by fabricating
performance issues and wrongfully terminating me for said false issues and "job abandonment".
Subsequent to my discrimination and Solar Energy World LLC's indefensible retaliation and
exposure to this hostile and abusive work environment, I suffered mental health issues requiring
hospitalization and continued treatment. This has had a marked effect on my earning abilities and
my standard of living, as well as my quality of life.

I sought protections of the EEOC and allowed their investigation to progress for some
time but upon advice believe but this is best settled in the courts. Aloysius E. Gleeson (*Exhibit
R*), Tope Lala, and Geoff Mirkin are named in this case because they are owners of Solar Energy
World LLC and thus as officers of the company are responsible for the actions of its directors
and employees. Sunrun Inc. is named as a "Respondeat Superior" because Solar Energy World
LLC was an authorized dealer of Sunrun Inc. solar products and financing arrangements and thus
the legal doctrine that makes an agency liable for the actions of its agents when the actions take
place within the scope of agency.

Exhibit A is the Notice of Right to Sue.

Exhibits B, C, D, E, F, G, H, I, K, L, and AC our documents yielded from either Solar Energy
World LLC or EEOC's investigation showing in detail the discrimination, abuse, and subsequent
retaliation I suffered. (Exhibit I contains a sworn
affidavit supporting my case)

Exhibits J, O, and AE and are previous legal precedent in cases that show Solar Energy World LLC's pattern of violating labor statutes to the detriment of their employees.

Exhibit M is Sunrun Incorporated's code of conduct showing that it is against their own stated rules and regulations the kind of abuse I suffered, and their culpability and liability when it occurs among their agents and authorized dealers.

Exhibit N is legal precedent of Sunrun Inc. settling a similar case of workplace/employment discrimination among authorized dealers.

Exhibits P and V are evidentiary documentation of my work for Sunrun Inc. and my appointment with Sunrun Inc. as an agent through Solar Energy World LLC.

Exhibit Q is background on Solar Energy World LLC as a company.

Exhibits S, T, U are background and evidentiary support on the defendants.

Exhibit W are documents issued to me as Solar Energy World LLC employee proving my engagement in the job.

Exhibits X, Y, Z and AA our evidentiary documentation of my mental state as a result of the abuse I suffered at Solar Energy World LLC.

Exhibit AB are names of Solar Energy World LLC employees who were either victimized against as well or who can serve as witnesses to my case.

Exhibit AD is a detailed analysis of my well-documented and defined disability.

**Relief Sought:**

1. **Lost Wages from "wrongful termination" - $124,000**
2. **Damages from "wrong termination" - $620,000**
3. **Pain, Suffering, and Mental Anguish - $900,000**
4. **Punitive Damages for discriminatory practices - $800,000**
5. **Legal Fees/Costs $780**

**Total: $2,444,780**

Respectfully submitted,

*JB*                    10/20/2021

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jordan T. Breslow<br>314 South Henderson Road<br>Apt. G103<br>King Of Prussia, PA 19406 | From: | Philadelphia District Office<br>801 Market Street<br>Suite 1000<br>Philadelphia, PA 19107 |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2021-02878 | Legal Unit,<br>Legal Technician | (267) 589-9707 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
*(See the additional Information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Dana R. Hutter*
_____
**Dana R. Hutter,**
**Deputy Director**

October 19, 2021
_____
*(Date Issued)*

Enclosures(s)

cc:    **Judd G. Millman, Esq.**
**SOLAR ENERGY WORLD**
**201 Kelsey Ln.**
**Tampa, FL 33619**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope and record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➤ **Only one** major life activity need be substantially limited.
➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**
➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**Breslow Response to SEW Position Statement**

July 2021

1. *Complainant completed less than one month of service for SEW, having started on March 15, 2021 and thereafter abandoning his employment on April 13, 2021. Complainant now generically alleges that SEW discriminated and retaliated against him based upon an unspecified "disability effecting [sic] my work," as well as based upon his "Jewish faith." Suffice it to say, SEW strongly denies all of Complainant's allegations of unlawful conduct. With Complainant's*
*barebones allegations devoid of the requisite factual enhancement, the Commission should dismiss the Charge entirely.*

**Breslow Response:** The length of my employment is irrelevant and furthermore as I've contended in the past, I did not abandon my job but remove myself from the situation in which I did not feel safe and availed myself of legal protections. The harassment and abuse I suffered whether it's for five minutes or for five years is still abuse and harassment. My responses were not generic and in many cases I amplified them in my interviews with EEOC officials and reserve the right to do that in the future further. My allegations have factual support, I even uploaded an affidavit of a third party who can attest to my claims, and if the relevant parties were deposed, I believe we could garner additional relevant facts. I do not believe this charge should be dismissed but investigated further. I was retaliated against after coming forward to the EEOC. Solar Energy World fabricated claims of job abandonment by omitting relevant facts and overstating minor/technical issues, which in and of itself was retaliatory,

2. *Complainant's employment commenced on March 15, 2021. Complainant was employed in the position of a Solar Analyst, for which his primary job duties were serving as a sales representative for residential solar products, responding to sales leads, and conducting in-home sales presentations. Of note, Complainant was advised prior to the commencement of employment that the position required work on Saturday, and that, indeed, Saturday was often one of the busiest days of the week since this was day available to homeowners/customers. Complainant fully accepted the requirement of being required to work on Saturdays.*

**Breslow Response:** I do not find issue with the dates of the commencement of my employment and my job responsibilities as outlined above. As I've said previously, I had no issue with working Saturdays but some Saturdays I would be unable to work for religious obligations. I was entitled to take off some Saturdays for religious obligations and not be berated for that. I worked Saturdays when I was employed at Solar Energy World that were not religious holidays or occasions.

**Breslow Response to SEW Position Statement**

July 2021

3. *Prior to the completion of his first month of employment, Complainant was scheduled to attend a mandatory meeting on April 12, 2021 at 9:00 a.m. At approximately 8:57 a.m., three minutes prior to the meeting start time, Complainant stated he would not attend the meeting.*

**Breslow Response:** Again, as previously stated this was a virtual meeting and I was not feeling well suffering from nausea and diarrhea. I'm entitled to miss a meeting for illness. Given that it was in a virtual format, and that I provided the text messages with my superior that informed him on the date in question, 3 minutes is a sufficient warning. I was earnestly trying to feel well enough to attend but could not pry myself away from the facilities.

4. *As of April 13, 2021, SEW was generally unable to establish communication with Complainant. Indeed, it was believed that Complainant abandoned his position as of April 13.*

**Breslow Response:** Once I filed a complaint with the EEOC I availed myself of those protections. I did not abandon my job but took a reasonable step back after suffering a great deal of verbal abuse and harassment to regain my composure and allow the appropriate authorities to assist me in resolving this matter. I did not abandon my job, I sent a traceable FedEx pouch with documents to HR laying out the situation, namely that I was not comfortable returning to the Pennsauken office until things have been resolved regarding harassment in the workplace.

5. *On April 14, 2021, Complainant failed to attend a weekly sales meeting. Complainant's supervisor, Will McColley, was unable to contact Complainant, and Complainant did not respond to multiple messages from Mr. McColley.*

**Breslow Response:** As I have asserted and as I continue to assert Mr. McColley frequently berated me and fostered a hostile work environment. I had become frightened of him and had removed myself from the Pennsauken office because of his abuse and harassment. I was not comfortable responding to him and quite frankly with the information that I brought forward to Solar Energy World it would have been more

**Breslow Response to SEW Position Statement**

July 2021

appropriate for another representative of the company to contact me. I have a right not to want to converse with such an individual who had come to torment me at work in the capacity of my direct superior.

6. *As a Solar Analyst, handling and carrying out sales leads is the primary duty of Complainant's job. Complainant had a sales lead scheduled for April 14, 2021 at 5:00 p.m. When Mr. McColley was unable to establish communication with Complainant, Mr. McColley was forced to handle the lead himself. Ultimately, the lead was lost, which was largely attributable to Complainant's failure to communicate. This may have resulted in a significant financial loss to the SEW (e.g., over $15,000.00) byway of losing the sale of a residential solar system to a homeowner.*

   *On April 15, 2021, another significant sales lead issue arose. The customer reported to SEW that an in-home sales meeting was confirmed, that Complainant then attempted to unilaterally change the in-home meeting to a virtual-meeting, and Complainant then never followed up any further with the customer. This lead was lost which, again, may have potentially caused a significant financial loss to the company (e.g., over $15,000.00) byway of losing the sale of another residential solar system.*

**Breslow Response:** First of all, I have every right to remove myself from situations where I don't feel safe and avail myself of legal protections as previously stated. I informed HR the best way I knew how given their lack of physical presence in the Pennsauken office, and actual location in Maryland. You would not ask somebody to walk into a burning building. That is how I felt after languishing under Mr. McColley's verbal harassment and abuse for some weeks. Additionally, Solar Energy World's description of the sales opportunity is very much in line with their tactics of exaggeration which in my view bolsters my claim of retaliation because constitutes pattern of behavior. Solar Energy World buys Internet leads that are sold to multiple vendors. They used their in-house marketing team to confirm appointments with those Internet leads. But the leads that Solar Energy World purchases leads that are frequently sold to multiple vendors. When a solar analyst arrives at a Solar Energy World arranged appointment, you're one of many contractors bidding for the job. It is a highly competitive sales environment and the idea that somehow, I handling those appointments would have guaranteed an over $15,000 sale is ludicrous. In my experience even the most experienced sales agents only had success perhaps one in eight meetings. The leaderboard in the office spelled that out quite plainly and additionally I would like Solar Energy World to submit their lead CRM to further evidence this reality. Solar Energy World is overstating this financial loss in an effort to discredit me. Additionally, leads are easily re-booked and rescheduled, and this was in no way a slam dunk

## Breslow Response to SEW Position Statement

July 2021

sales opportunity that I somehow squandered for the company. Once again, Solar Energy World is exaggerating things to bolster their claim and discredit me which is what they did when they retaliated against me and wrongfully terminated me. It is most certainly a pattern of behavior in my view. Solar Energy World likes to skew information to serve their purposes, just like me removing myself from an unsafe situation and informing HR of verbal abuse and harassment in the workplace was me abandoning my job. That seems to be the Solar Energy World approach. Leads are easily reassigned to one of the other sales analysts and a significant marketing department exists to aid in this process. Also, with the state of the COVID-19 health crisis it is applicable and often necessary to offer potential customers the option for virtual meetings. I was not trying to switch to a virtual meeting for any ulterior motive. Many sales analysts use virtual meetings, and they are permitted by Solar Energy World. Our goal is to make people feel comfortable and want to work with us. Personally, I would prefer to have all in person meetings as I feel that they generally allow for better engagement and thereby sales opportunities. But as a good employee and salesperson it is my job to inform those perspective customers of their options to aid in making them feel comfortable. I would personally like to depose this prospective customer referenced above and confirm then I offered them the option for a virtual meeting to make them feel comfortable in this COVID environment. There's nothing wrong with virtual meetings and they can be an effective tool in the sales process. With the advent of Zoom virtual meetings are a reliable method of holding a sales demonstration. Again, this is Solar Energy World twisting the facts to serve their aims. I also followed up with prospective customers but anytime after I availed myself of legal protections and informed HR thusly is not applicable.

7. *Following all of the above, on or about April 15, 2021, Complainant sent a FedEx package to SEW containing the following:*

*1. 5-page document with a submission date of 4/13/2021 and entitled "EEOC (INQUIRY) NUMBER: 530-2021-02878";*

*2. 2-page document dated 4/13/21 and entitled "Your Appointment is Scheduled"; and*

*3. 32-page document, marked "confidential," entitled "Report of PsychoEducational Evaluation," and which appears to be from on or around June of 2010 and from the time Complainant was 16 years old.*

*The documents described above are collectively referred to as "EEOC Inquiry." Prior to receipt of the EEOC Inquiry, SEW had not previously received any other information, complaints, or*

**Breslow Response to SEW Position Statement**

July 2021

concerns from Complainant relating to any of the issues described in the EEOC Inquiry.

**Breslow Response:** All the information that I sent to Solar Energy World in that packet was relevant because it documented the harassment I was suffering and my disability. I was 16 years old when my disability was diagnosed, and it is still relevant over a decade later. I revealed it to my supervisor Mr. McColley during training once employed. As I've said previously Solar Energy World did not have HR on premises in the Pennsauken NJ office. Also, my direct supervisor was the offending party so how does one report abuse to their abuser. Additionally, I wasn't really sure how to reach out to HR and I was emotionally strained given the harassment I was suffering. Sending this packet to HR once things had reached a boiling point and where I didn't feel safe in the office anymore seemed to be the best method. I wanted something traceable so that Solar Energy World couldn't deny having received it and because of the documents and their sensitive nature a physical delivery of them was preferred. I refer Solar Energy World's counsel to the Americans with Disabilities act of 1990 and Health Insurance Portability and Accountability Act of 1996 which put strict regulations on the delivery of sensitive information relating to health and disabilities.

8. *In Complainant's EEOC Inquiry, Complainant asserts allegations relating to his supervisor, Mr. McColley, including allegations that Complainant believes Mr. McColley discriminated against Complainant on the basis of religion and disability. SEW informed Complainant that the company takes his EEOC Inquiry seriously and that his EEOC Inquiry will be carefully investigated, including seeking further follow up and information from Complainant. SEW informed Complainant that he was being placed on investigatory leave. Exhibit 1 (Notice of Investigatory Leave). Complainant acknowledged his leave and returned a signed copy of the letter, with his comments. Exhibit 2 (Comments from Complainant). SEW proceeded with conducting its investigation of Complainant's allegations. As part of its investigation, on April 23, 2021 SEW sent Complainant a comprehensive set of questions relating to the issues raised in his EEOC Inquiry. Exhibit 3 (Questionnaire). Complainant completed the questionnaire and returned it to SEW ("Completed Questionnaire"). Exhibit 4 (Completed Questionnaire). In his Completed Questionnaire, Complainant states: 1. He refused to discuss any of his concerns alleged in the EEOC Inquiry with SEW because "the weight of all the traumas [sic] inflicted on me by my supervisor had become too much to bear . . . I was [not] in the state to talk to anyone at [SEW] . . . all of SEW felt unsafe." Exhibit 4 (Response to Question 2, page 11); 2. Complainant admits that he abandoned his job after submitting his EEOC Inquiry, stating "After April 13th 2021, the date of my EEOC complaint and according to my reading of employment law, I had the right to remove myself from situations I deemed unsafe." Exhibit 4 (Response to Question 3, page 12) (emphasis added); 3. Complainant admits that he failed to appear for a meeting, without providing any notice to SEW, "because I did not feel safe in my supervisor's presence." Exhibit 4*

## Breslow Response to SEW Position Statement

July 2021

*(Response to Question 4, page 13). Complainant states, again, that he believes he was allowed to disregard all work responsibilities after April 13 when he alleges he submitted his EEOC Inquiry. Id. 4. While Complainant never raised any concerns to SEW prior to filing his EEOC Inquiry, and in an a veiled attempt to further rationalize his job abandonment, Complainant alleges that he believes his "very physical safety at some point might become at risk." Exhibit 4 Equal Employment Opportunity Commission July 2, 2021 Page 6 of 7 (Response to Question 6, page 14). While Complainant alleges "there really was nobody to report this to at SEW," Complainant nonetheless did submit his EEOC Inquiry to SEW's human resources department, demonstrating that there were individuals he was aware of and for which he could report any potential workplace concern. Id. 5. Complainant stated that even after being relieved of all work duties and placed on leave, he still did not feel safe, stating "I did not feel safe being put on leave." Exhibit 4 (Response to Question 7, page 15). On April 27, 2021, and upon completing its investigation, SEW informed Complainant that the was being terminated for insubordination, failure to perform job duties, failure to communicate, and job abandonment. Exhibit 5 (Termination Letter). Complainant signed the termination letter, and provided the following further response to the separation of his employment: 1. Complainant falsely claimed that SEW's termination "was made in haste" and that SEW was not permitted to terminate his employment "until the EEOC inquiry and complaint yielded their results." Id. at p. 2. Complainant wrongly concludes that "this constitutes wrongful termination." Id. 2. Complainant falsely claimed that SEW only terminated his employment "to discredit me and move on." Id. He then proceeded to reiterate his mistaken assumption that he was entitled to abandon his position after filing his EEOC Inquiry, stating "many of these so called 'acts of misconduct' occurred after I remove [sic] from a situation, I deemed unsafe and afforded myself protections of an EEOC complaint."*

**Breslow Response:** Yes, I agreed to investigatory leave. I thought a thorough investigation would be conducted by Solar Energy World in coordination with the EEOC. What ended up happening was Solar Energy World conducted what was a two-week investigation which I'm not really sure how it could be concluded that quickly given the gravity of my allegations and the number of people that would need to be interviewed thoroughly. It seems quite too fast. Additionally, it did not happen in conjunction with the EEOC as the EEOC is still investigating. So, I believe I am correct that they did terminate me in haste for a few reasons. 1) being that if an investigation was conducted quickly and shoddily and not in conjunction with the appropriate regulatory authorities that I informed and 2) that I was supposed to be placed on leave which is not job abandonment and then I was labeled as abandoning my job that is wrong as well. My goal was always to return to work once the investigation concluded and yielded either results and/or solutions to the problems/allegations I posed. My answers to all of Solar Energy World's questions in their questionnaire that they sent me were

## Breslow Response to SEW Position Statement

July 2021

reasonable and in line with labor law. I personally communicated with their HR director during the investigation that I wanted a taped interview as a means of providing my answers. They did terminate me in haste because the EEOC investigation was not concluded. That should have meant a great deal to Solar Energy World because if I said that I had third parties willing to attest to my assertions. They could not interview and corroborate my allegations with the third parties, so how else could Solar Energy World obtain those facts if not through the EEOC? I think we can agree it's hasty to conclude an investigation before you have all the facts. And to use an analogy, it would be like a private security company concluding an investigation into a crime without the inclusion and support of the local police. I feel this analogy holds weight because the EEOC is the appropriate authority that needs to conclude this investigation. They not terminated me I would have been pleased to return to work once the serious issues that I had raised had been resolved but they have robbed me of that opportunity and drawn quite the line in the sand. Additionally, I'd like to talk to other former Solar Energy World employees (like Jesse Berg who I believe suffered similarly I can't speak to what degree) but who may shed additional light on this. I was never insubordinate and I always followed orders and directions as they were outlined. I would like to personally see a personnel file that shows me ever disobeying in order from a superior because I know that didn't happen. Additionally, how can one perform their duties if they're supposed to be on investigatory leave and removing themselves from the situation where somebody is harassing them. It would be like penalizing a victim from not returning who place where they're where they were victimized. I didn't abandon my job I didn't fail before my duties I removed myself from a situation and availed myself of legal protections which I thought I was on the same page with my employer. Their response was not to examine all the facts and simply terminate me. How could they have examined all the facts when they didn't have all the facts.

9. *Complainant cannot prove that SEW discriminated against him based upon his religion or disability. Complainant alleges that SEW discriminated against him based on his religion and disability. In order to prove such discrimination, Complainant must prove that he is a member of a protected class and that members outside of this class have received more favorable treatment. Complainant cannot meet any element of this prima facie test.*

*Complainant has not provided any allegations, much less evidence, that any co-worker received more favorable treatment. His complaints were investigated and found to be unmeritorious. Based upon the investigations of the Company, Complainant's supervisor, Will McColley did not harass, discriminate or retaliate against Complainant.*

**Breslow Response:** Religion and disability are protected classes. If I had access to Solar Energy World CRM and other sales opportunity information, I could show how other sales and/or solar analysts were given better opportunities. I saw it with my own eyes. I could

## Breslow Response to SEW Position Statement

July 2021

show the preferment of one class over the other. You cannot fail the prima facie test if one party is not sharing or purposely omitting information relevant to the test. Evidence of a variety of nature, exists against Mr. McColley supporting my case alleging harassment and I could show it through depositions of current and former employees and third-party corroboration. Again, I could evidence the favorable treatment with access to Solar Energy World's sales files.

10. *Based on these facts, SEW respectfully requests that the Commission dismiss Complainant's religion and disability discrimination claims.*

**Breslow Response:** I would respectfully ask the EEOC to continue investigation and to not dismiss on the basis of the facts or lack thereof ascertained by Solar Energy World's slipshod an incomplete investigation.

11. *SEW did not retaliate against Complainant. Complainant also alleges that SEW retaliated against him. In order to prove retaliation, Complaint must prove that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Complainant cannot prove the third element of this test. SEW did receive Complainant's EEOC Inquiry on April 15, 2021. However, there is no causal connection between Complainant's EEOC Inquiry and his subsequent termination. Complainant engaged in gross misconduct, intentionally refusing to handle important sales lead, failing to communicate with his manager, failing to attend required meetings, refusing to communicate with the company, and generally engaging in insubordination. Indeed, as stated in his Completed Questionnaire (Exhibit 4), Complainant has taken the misguided position that he was entitled to "job protection" after submitting his EEOC Inquiry, which Complainant understood to mean he was entitled to fully abandon all job responsibilities after notifying the EEOC of his inquiry (and even before Complainant notified SEW of the EEOC Inquiry) and while being fully insulated from any response by the employer. Complainant is wrong. Complainant engaged in gross insubordination, ignoring his supervisor, refusing to communicate, and causing the company to lose out on valuable potential sales leads. SEW did not engage in any retaliation of any type. Therefore, the Commission should dismiss Complainant's retaliation claim as well.*

**Breslow Response:** My protected activity was removing myself from a workplace where I did not feel safe due to prolonged harassment. Solar Energy World's counsel is conflating facts. By filing an EEOC complaint I was availing myself of legal protections and one of

**Breslow Response to SEW Position Statement**

July 2021

those legal protections was to remove myself from a workplace where I did not feel safe. I do not feel that anyone could compel an employee to return to an unsafe working environment and/or hostile working environment until those issues have been resolved. Once again, I object to the usage of the term "gross misconduct", the Cornell legal library defines "gross misconduct" as things such as fraud or embezzlement. This is yet another instance of Solar Energy World either not understanding the facts, overstating the facts or deliberately making false allegations. I did not abandon my job I removed myself from an unsafe working conditions and availed myself of legal protections until such time as the unsafe conditions were resolved or another solution was presented to me. As I've previously stated these accusations of hurting the company are simply poppycock. For the reason that an employee cannot be compelled to return to an environment where they do not feel safe and which investigation is still underway into those allegations and that the statement of financial loss is completely exaggerated. With access to personnel files I could additionally support that I was not insubordinate.



SolarEnergyWorld
*Because Tomorrow Matters*

July 2, 2021

**VIA EEOC PORTAL**
Equal Employment Opportunity Commission

Re:     Charge No. 530-2021-02878
        Complainant: Jordan T. Breslow

To Whom it May Concern:

The following is submitted as the Position Statement[1] of Respondent Solar Energy World, LLC (hereinafter "SEW") in response to the Charge of Discrimination filed by Complainant Jordan T. Breslow ("Complainant"). The information contained in this Position Statement is based on SEW's investigation to date. SEW respectfully reserves the right to amend this Position Statement in the future.

Complainant completed less than one month of service for SEW, having started on March 15, 2021 and thereafter abandoning his employment on April 13, 2021. Complainant now generically alleges that SEW discriminated and retaliated against him based upon an unspecified "disability effecting [sic] my work," as well as based upon his "Jewish faith." Suffice it to say, SEW strongly denies all of Complainant's allegations of unlawful conduct. With Complainant's barebones allegations devoid of the requisite factual enhancement, the Commission should dismiss the Charge entirely.

**I.     FACTUAL BACKGROUND**

**A.     SEW and Its Policies.**

       **1.     *SEW's EEO Policy.***

---

[1] The information and supporting documentation provided or referenced herein, as well as any and all information which may be provided to the Commission in the future, are strictly confidential and are not to be used for any reason other than the resolution of the instant charge. Moreover, this information, as well as any information which may be submitted hereafter, is not to be disseminated without SEW's prior written approval. Further, the submission of any information and the assertion of any defense by SEW herein (or in any future submission) does not constitute a waiver of the right to submit any other information or of any and all defenses which SEW may not have submitted or asserted herein buy may wish to submit or assert in the future, all of which are expressly reserved.

www.solarenergyworld.com        410.579.2009        5681 Main Street        Elkridge, MD 21075

Equal Employment Opportunity Commission
July 2, 2021
Page 2 of 7

SEW is a residential and commercial solar energy company specializing in the sale and installation of renewable energy products.  SEW markets its services along the East Coast, with a specific focus on Maryland, Virginia, New Jersey, and Florida.

SEW is an equal opportunity employer and has a firm policy against discrimination.  SEW maintains its equal opportunity policy, workplace accommodation policy, and anti-retaliation policy in its Employee Handbook.  Complainant was provided a copy of the Employee Handbook and he executed an acknowledgment form confirming his receipt, review and understanding of the Handbook.

SEW has demonstrated a strong commitment to preventing and correcting discrimination in the workplace.  To that end, SEW's Equal Employment Opportunity Policy states, in pertinent part, as follows:

> In order to provide equal employment and advancement opportunities to all individuals, employment decisions at SEW will be based on merit, qualifications, and abilities.  SEW does not discriminate in employment opportunities or practices based on race, color, religion, sex, marital status, national origin, citizenship status, age, disability, veteran status, sexual orientation, or any other characteristic protected by law.
>
> This policy applies to all terms, conditions, and privileges of employment, including recruitment, hiring, placement, compensation, promotion, discipline, and termination.  Further, SEW is happy to work with otherwise qualified disabled employees in accordance with the Americans with Disabilities Act (ADA).  It is up to the employee to approach his or her supervisor with this request, and to provide medical proof of his or her needs upon SEW's request.

2.   ***SEW's Reasonable Workplace Accommodations Policy***

SEW maintains a Reasonable Workplace Accommodations policy, which states, in pertinent part, as follows:

> It is the policy of SEW to comply with all the relevant and applicable provisions of the federal Americans with Disabilities Act (ADA) and Pregnancy Discrimination Act (PDA), as well as state and local laws concerning the hiring and employment of individuals with temporary and ongoing disabilities.  Pregnant workers may also

Equal Employment Opportunity Commission
July 2, 2021
Page 3 of 7

have impairments related to their pregnancies that qualify under the ADA. SEW will not discriminate against any qualified employee or job applicant because of a person's physical or mental disability with respect to any terms, privileges, or conditions of employment, including, but not limited to hiring, advancement, discharge, compensation, and training.

Employees who become disabled should notify their supervisor or manager if the conditions of the disability impair their ability to perform the essential functions of their position. Where necessary and possible, reasonable accommodations will be made for qualified disabled employees to perform the essential functions of the job in question, if the accommodation does not cause SEW undue hardship.

All employees must comply with safety standards. Applicants who pose a direct threat to the health or safety of other individuals in the workplace, which cannot be eliminated by reasonable accommodation, will not be hired. Current employees who pose a direct threat to the health or safety of the other individuals in the workplace will be placed on appropriate leave until a decision has been made by management in regard to the employee's immediate employment situation.

3.    *SEW's Anti-Retaliation Policy.*

SEW maintains an anti-retaliation policy, which states, in pertinent part, as follows:

SEW subscribes to the open-door policy. Employees may bring a complaint to their supervisor, manager, or the human resources manager for resolution. Complaints may be in verbal or written form. SEW's policy requires an immediate, thorough, and objective investigation of any complaint.

It is against SEW policy and unlawful to retaliate in any way against anyone who has lodged a harassment complaint, has expressed a concern about harassment (including sexual harassment) or has cooperated in a harassment investigation. The initiation of a complaint, in good faith, will not under any circumstances be grounds for disciplinary action.

Equal Employment Opportunity Commission
July 2, 2021
Page 4 of 7

**B.     Complainant's employment with SEW.**

Complainant's employment commenced on March 15, 2021. Complainant was employed in the position of a Solar Analyst, for which his primary job duties were serving as a sales representative for residential solar products, responding to sales leads, and conducting in-home sales presentations. Of note, Complainant was advised prior to the commencement of employment that the position required work on Saturday, and that, indeed, Saturday was often one of the busiest days of the week since this was day available to homeowners/customers. Complainant fully accepted the requirement of being required to work on Saturdays.

Prior to the completion of his first month of employment, Complainant was scheduled to attend a mandatory meeting on April 12, 2021 at 9:00 a.m. At approximately 8:57 a.m., three minutes prior to the meeting start time, Complainant stated he would not attend the meeting.

As of April 13, 2021, SEW was generally unable to establish communication with Complainant. Indeed, it was believed that Complainant abandoned his position as of April 13.

On April 14, 2021, Complainant failed to attend a weekly sales meeting. Complainant's supervisor, Will McColley, was unable to contact Complainant, and Complainant did not respond to multiple messages from Mr. McColley.

As a Solar Analyst, handling and carrying out sales leads is the primary duty of Complainant's job. Complainant had a sales lead scheduled for April 14, 2021 at 5:00 p.m. When Mr. McColley was unable to establish communication with Complainant, Mr. McColley was forced to handle the lead himself. Ultimately, the lead was lost, which was largely attributable to Complainant's failure to communicate. This may have resulted in a significant financial loss to the SEW (*e.g.*, over $15,000.00) byway of losing the sale of a residential solar system to a homeowner.

On April 15, 2021, another significant sales lead issue arose. The customer reported to SEW that an in-home sales meeting was confirmed, that Complainant then attempted to unilaterally change the in-home meeting to a virtual-meeting, and Complainant then never followed up any further with the customer. This lead was lost which, again, may have potentially caused a significant financial loss to the company (*e.g.*, over $15,000.00) byway of losing the sale of another residential solar system.

Following all of the above, on or about April 15, 2021, Complainant sent a FedEx package to SEW containing the following:
    1.      5-page document with a submission date of 4/13/2021 and entitled "EEOC (INQUIRY) NUMBER: 530-2021-02878";

Equal Employment Opportunity Commission
July 2, 2021
Page 5 of 7

     2.     2-page document dated 4/13/21 and entitled "Your Appointment is Scheduled"; and

     3.     32-page document, marked "confidential," entitled "Report of Psycho-Educational Evaluation," and which appears to be from on or around June of 2010 and from the time Complainant was 16 years old.

The documents described above are collectively referred to as "EEOC Inquiry."  Prior to receipt of the EEOC Inquiry, SEW had not previously received any other information, complaints, or concerns from Complainant relating to any of the issues described in the EEOC Inquiry.

     In Complainant's EEOC Inquiry, Complainant asserts allegations relating to his supervisor, Mr. McColley, including allegations that Complainant believes Mr. McColley discriminated against Complainant on the basis of religion and disability.  SEW informed Complainant that the company takes his EEOC Inquiry seriously and that his EEOC Inquiry will be carefully investigated, including seeking further follow up and information from Complainant.   SEW informed Complainant that he was being placed on investigatory leave. **Exhibit 1 (Notice of Investigatory Leave).**  Complainant acknowledged his leave and returned a signed copy of the letter, with his comments. **Exhibit 2 (Comments from Complainant).**

     SEW proceeded with conducting its investigation of Complainant's allegations. As part of its investigation, on April 23, 2021 SEW sent Complainant a comprehensive set of questions relating to the issues raised in his EEOC Inquiry.   **Exhibit 3 (Questionnaire).**   Complainant completed the questionnaire and returned it to SEW ("Completed Questionnaire").  **Exhibit 4 (Completed Questionnaire).**

     In his Completed Questionnaire, Complainant states:
     1.     He refused to discuss any of his concerns alleged in the EEOC Inquiry with SEW because "the weight of all the traumas [sic] inflicted on me by my supervisor had become too much to bear . . . I was [not] in the state to talk to anyone at [SEW] . . . all of SEW felt unsafe." **Exhibit 4 (Response to Question 2, page 11)**;
     2.     Complainant admits that he abandoned his job after submitting his EEOC Inquiry, stating "After April 13th 2021, the date of my EEOC complaint and according to my reading of employment law, **I had the right to remove myself from situations I deemed unsafe.**" **Exhibit 4 (Response to Question 3, page 12) (emphasis added)**;
     3.     Complainant admits that he failed to appear for a meeting, without providing any notice to SEW, "because I did not feel safe in my supervisor's presence." **Exhibit 4 (Response to Question 4, page 13).**  Complainant states, again, that he believes he was allowed to disregard all work responsibilities after April 13 when he alleges he submitted his EEOC Inquiry. *Id.*
     4.     While Complainant never raised any concerns to SEW prior to filing his EEOC Inquiry, and in an a veiled attempt to further rationalize his job abandonment, Complainant alleges that he believes his "very physical safety at some point might become at risk." **Exhibit 4**

Equal Employment Opportunity Commission
July 2, 2021
Page 6 of 7

**(Response to Question 6, page 14).**  While Complainant alleges "there really was nobody to report this to at SEW," Complainant nonetheless did submit his EEOC Inquiry to SEW's human resources department, demonstrating that there were individuals he was aware of and for which he could report any potential workplace concern. *Id.*

     5.    Complainant stated that even after being relieved of all work duties and placed on leave, he still did not feel safe, stating "I did not feel safe being put on leave." **Exhibit 4 (Response to Question 7, page 15).**

     On April 27, 2021, and upon completing its investigation, SEW informed Complainant that the was being terminated for insubordination, failure to perform job duties, failure to communicate, and job abandonment. **Exhibit 5 (Termination Letter).** Complainant signed the termination letter, and provided the following further response to the separation of his employment:

     1.    Complainant falsely claimed that SEW's termination "was made in haste" and that SEW was not permitted to terminate his employment "until the EEOC inquiry and complaint yielded their results." *Id.* at p. 2. Complainant wrongly concludes that "this constitutes wrongful termination." *Id.*

     2.    Complainant falsely claimed that SEW only terminated his employment "to discredit me and move on." *Id.* He then proceeded to reiterate his mistaken assumption that he was entitled to abandon his position after filing his EEOC Inquiry, stating "many of these so called 'acts of misconduct' occurred after I remove [sic] from a situation, I deemed unsafe and afforded myself protections of an EEOC complaint."

**II.**     **DISCUSSION**

**A.**     **Complainant cannot prove that SEW discriminated against him based upon his religion or disability.**

     Complainant alleges that SEW discriminated against him based on his religion and disability. In order to prove such discrimination, Complainant must prove that he is a member of a protected class and that members outside of this class have received more favorable treatment. Complainant cannot meet any element of this *prima facie* test.

     Complainant has not provided any allegations, much less evidence, that any co-worker received more favorable treatment. His complaints were investigated and found to be unmeritorious. Based upon the investigations of the Company, Complainant's supervisor, Will McColley did not harass, discriminate or retaliate against Complainant.

     Based on these facts, SEW respectfully requests that the Commission dismiss Complainant's religion and disability discrimination claims.

Equal Employment Opportunity Commission
July 2, 2021
Page 7 of 7

**B.      SEW did not retaliate against Complainant.**

Complainant also alleges that SEW retaliated against him. In order to prove retaliation, Complaint must prove that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Complainant cannot prove the third element of this test.

SEW did receive Complainant's EEOC Inquiry on April 15, 2021. However, there is no causal connection between Complainant's EEOC Inquiry and his subsequent termination. Complainant engaged in gross misconduct, intentionally refusing to handle important sales lead, failing to communicate with his manager, failing to attend required meetings, refusing to communicate with the company, and generally engaging in insubordination. Indeed, as stated in his Completed Questionnaire (**Exhibit 4**), Complainant has taken the misguided position that he was entitled to "job protection" after submitting his EEOC Inquiry, which Complainant understood to mean he was entitled to fully abandon all job responsibilities after notifying the EEOC of his inquiry (and even before Complainant notified SEW of the EEOC Inquiry) and while being fully insulated from any response by the employer. Complainant is wrong.

Complainant engaged in gross insubordination, ignoring his supervisor, refusing to communicate, and causing the company to lose out on valuable potential sales leads. SEW did not engage in any retaliation of any type. Therefore, the Commission should dismiss Complainant's retaliation claim as well.

**III.     Conclusion**

Based on the foregoing, SEW requests that the Commission dismiss Complainant's Charge in its entirety. If you should have any questions, please do not hesitate to contact me: jmillman@solarenergyworld.com

Very truly yours,

**Solar Energy World, LLC,** *by:*

*Judd G. Millman*

Judd G. Millman, Esq.
General Counsel

Enclosures (Exhibits 1 – 5)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 530-2021-02878 |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Jordan T. Breslow | (215) 206-3562 | 1993 |

| Street Address | City, State and ZIP Code |
|---|---|
| 314 South Henderson Road, Apt. G103, King Of Prussia, PA 19406 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| SOLAR ENERGY WORLD | 15 - 100 | (866) 856-4580 |

| Street Address | City, State and ZIP Code |
|---|---|
| 100 Twinbridge Dr., ~~Birmingham~~ Pennsauken, NJ 08011  Suite F 16 | |

| Name | | |
|---|---|---|
| | No. Employees, Members | Phone No. *(Include Area Code)* |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **04-01-2021**   Latest: **04-26-2021**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was employed by Respondent on or around March 15, 2021. Respondent was aware of my disability.

On or around March 26, 2021, I requested off for Passover, and on or around April 3, 2021 for a one-year anniversary memorial service for my mother, which holds religious significance in the Jewish faith. I was permitted those days off but was harassed by the Vice President of sales, my supervisor, Will McColley. McColley stated that I was lazy for taking Saturdays off due to my sincerely-held religious beliefs. Respondent also used anti-Semitic language. Respondent harassed me about my sales and would say things like "are you slow" and "retarted", in reference to my disability effecting my work. This would happen weekly. On or around April 14, 2021, I complained to Human Resources detailing the harassment. On or around April 16, 2021, Human Resources informed me that I would be put on investigatory leave. On or around April 26, 2021, I was discharged because I "abandoned my job."

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 6/18/2021          *JB* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 530-2021-02878 |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I allege that I was discriminated and retaliated against due to my religion (Judaism), in violation of Title VII of the Civil Rights Act of 1964, as amended, and I allege that I was discriminated and retaliated against due to my disability, in violation of the American with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 6/18/2021<br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT.** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Solar Energy World
Attn: Stephanie Boyd
5681 Main St
Elkridge, MD 21075

4/14/2021

Re: Uncomfortable returning to Pennsauken Office

Stephanie,

At present I do not feel comfortable or safe returning to the Pennsauken office. We have a morning meeting today, but I do not feel comfortable in the office. Please see the enclosed EEOC complaint and other documents. I am at a loss for how to move forward, I like to remain part of SEW but a resolution to the issues raised must be addressed.

Regards,

Jordan Breslow



*4/13/2021 = EEOC Protestion* (handwritten)

April 16, 2021

**VIA FEDEX**
Mr. Jordan Breslow
314 S. Henderson RD
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

> Re:   Investigatory Leave
>        PRIVILEGED AND CONFIDENTIAL

Dear Mr. Breslow:

This letter is to inform you that you are being placed on investigatory leave, effective immediately, for all purposes and from your position with Solar Energy World, LLC ("SEW").

**A.   INVESTIGATORY LEAVE**

SEW will be investigating various issues described herein, including, but not limited to, incidents related to reports of gross misconduct and dereliction of your primary job duties. SEW cannot permit you to continue performing work, engaging with co-workers, and interacting with homeowners (all required aspects of your position) until it has had the opportunity to investigate these and any related matters. If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, including terminating your services, during the investigatory leave.

**B.   GENERAL DESCRIPTION OF ALLEGED CONDUCT**

The general basis for your placement on leave is the Performance Related Issues described below. This investigation is in its initial stage, and the basis may change or modify as the investigation continues. SEW has not made any determination with regard to any of the below allegations, and is only investigating these issues at this stage.

Performance Related Issues: — *Nonsense; no dereliction. Only seeking EEOC protection* (handwritten)

1. Your employment commenced on March 15, 2021.
2. You were scheduled to attend a mandatory meeting on April 12, 2021 at 9:00 a.m. At approximately 8:57 a.m., three minutes prior to the meeting start time, you communicated that you would not attend the meeting.

*This is because of illness, I'm entitled to be sick.* (handwritten)

Mr. Jordan Breslow
April 16, 2021
Page 2 of 5

*[handwritten, top right: 4/13/2021 is the beginning of my Protections afforded be during an EEOC inquiry]*

*[handwritten, left: I don't feel comfortable with Mr. Colley]*

3. Since April 13, 2021, SEW has been generally unable to establish communication with you. Indeed, it is believed that you may have abandoned your position as of April 13.

4. On April 14, 2021, you failed to attend a weekly sales meeting. Your supervisor, Will McColley, was unable to contact you, and you did not respond to his message.

5. As a Solar Analyst, handling and carrying out sales leads is the primary duty of your job. You had a sales lead scheduled for April 14, 2021 at 5:00 p.m. When Mr. McColley was unable to establish communication with you, Mr. McColley attempted to confirm and handle the lead himself. Ultimately, the lead was lost, which appears largely attributable to your failure to communicate. This may have resulted in a significant financial loss to the company by way of losing the sale of a residential solar system to a homeowner.

6. On April 15, 2021, another significant sales lead issue arose. The customer has reported to SEW that an in-home sales meeting was confirmed, that then you attempted to change it to a virtual-meeting, and that you then never followed up any further. This lead appears to have now been lost which, again, may have potentially caused a significant financial loss to the company by way of losing the sale of another residential solar system.

*[handwritten, left: 4/13/2021 = EEOC Protection not relevant]*

Points 1-6, above, are collectively referred to herein as "Performance Related Issues."

**Investigation of EEOC Inquiry** — *[handwritten: Notice of Right to Sue]*

**Equal Opportunity Employer:** SEW is an equal opportunity employer and is committed to equal opportunity without regard to an employee's actual or perceived race, religion, color, sex (including pregnancy), age, ancestry, national origin, citizenship, disability, marital status, sexual orientation, gender identity, genetic information, or any other basis of discrimination prohibited by applicable local, state or federal law. This policy applies to all terms and conditions of employment, including, but not limited to, the following: (1) recruitment, hiring, placement, transfer, promotion, and demotion; (2) training and development; (3) compensation and benefits; (4) educational, social and recreational programs; (5) discipline; and (6) termination of employment. Employment decisions, subject to the legitimate business requirements of SEW, are based solely on an individual's qualifications, merits, behavior and performance.

**Americans with Disabilities Act:** SEW also complies with the Americans with Disabilities Act (ADA), as well as state and local laws, in ensuring equal employment opportunities for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis. Qualified individuals with disabilities are entitled to be treated equally.

Mr. Jordan Breslow
April 16, 2021
Page 3 of 5

with other employees in terms of pay, benefits, and other forms of compensation (or changes in compensation), as well as in opportunities, assignments, classifications and position descriptions. SEW is also committed to not discriminating against any qualified employees or applicants because they have a history of having a disability, are related to or associated with a person with a disability, or are regarded as having a disability.

**Policy Against Retaliation:** Any employee, who, in good faith, files a complaint or participates in a related investigation, may not be subjected to reprisal or retaliation as a result of filing the complaint or participating in the investigation. Those involved in investigating the incident will make every effort to strike a balance between the parties' desires for privacy and the need to conduct a fair and effective investigation. Violation of the EEOC or ADA policies described above may subject the violating employee to disciplinary action, up to and including termination. Likewise, there may be disciplinary measures or termination if, in fact, it is determined that the reported incident and/or accusations were fabricated.

**Your EEOC Inquiry:** On or about April 15, 2021, you sent a FedEx package to SEW containing the following:

1. 5-page document with a submission date of 4/13/2021 and entitled "EEOC (INQUIRY) NUMBER: 530-2021-02878";
2. 2-page document dated 4/13/21 and entitled "Your Appointment is Scheduled"; and
3. 32-page document, marked "confidential," entitled "Report of Psycho-Educational Evaluation," and which appears to be from on or around June of 2010 and from the time you were 16 years old.

The documents described above are collectively referred to as "EEOC Inquiry." Prior to receipt of the EEOC Inquiry, SEW is unaware of previously receiving any other information, complaints, or concerns from you relating to any of the issues described therein.

In your EEOC Inquiry, you assert allegations relating to your supervisor, including allegations that you believe he discriminated against you on the basis of religion and disability. SEW takes your EEOC Inquiry seriously. Your EEOC Inquiry will be reviewed and we anticipate that we will contact you in order to obtain additional information. In the interim, please direct all correspondence and inquires relating to the EEOC Inquiry to Stephanie Boyd, Director of Human Resources (sboyd@solarenergyworld.com).

In your EEOC Inquiry, you allege that the illegal actions begun on April 1, 2021, approximately two-weeks after your employment begun. As noted, your EEOC Inquiry (received on April 15,

Mr. Jordan Breslow
April 16, 2021
Page 4 of 5

*[handwritten: I Don't feel safe, I have a right to remove myself from unsafe conditions]*

2021) was the first notice SEW received of any of the concerns described therein. In addition, it appears that immediately after submitting your EEOC Inquiry on or about April 13 with the EEOC, you discontinued performing all of your required job responsibilities and ceased communicating with your supervisor (despite his multiple attempts to contact you). *See* Performance Related Issues, described above.

C.     **DURING INVESTIGATION**

During the investigatory leave period, you: (1) are relieved of all of your duties at SEW and shall not perform any work; (2) are not permitted to enter SEW offices; (3) may not communicate with any employees, customers, potential customers, leads, vendors, sales representatives, or subcontractors of SEW; (4) may not access work email or systems; and (5) may not engage in any conduct intended to interfere with SEW's investigation.

SEW will endeavor to promptly compete this investigation by approximately April 26, 2021. However, due to the seriousness and potential complexity of this matter, your investigatory leave may be extended at SEW's discretion and as necessary.

*[handwritten: The EEOC Investigation takes precedence.]*

SEW requests that you make yourself reasonably available during your leave in order to participate in any investigative interviewing that may be requested and to ensure SEW can complete its investigation in a timely manner. SEW may email you a written questionnaire to complete and provide additional information on the issues described herein. If you do not make yourself available or respond to SEW's emails, SEW will proceed with the investigation and make a determination based on the information available.

*[handwritten: I have none]* At the commencement of this leave, you must immediately return all SEW property, including: (1) company computer; (2) company phone; (3) other company electronic equipment; (4) keys; (5) company files; (6) company records; and (7) any other similar or related SEW property that is in your possession. You are instructed to not delete any emails, text messages, documents and/or other relevant materials created during your time as an SEW sales representative.

You will be paid through today (despite a concern that you abandoned your position as of April 13). However, because you are under review for Performance Related Issues that potentially constitute gross misconduct, your leave will be without pay. If the investigation does not indicate disciplinary action is warranted and you agree to return to your prior position, then you will be paid for the time missed while on investigatory leave. If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, up to and including termination, during the investigatory leave.

*[handwritten: retaliation — pay should remain]*

Mr. Jordan Breslow
April 16, 2021
Page 5 of 5

We appreciate your cooperation in this matter and hope that the situation will be resolved in a manner that is satisfactory to all parties involved.

Solar Energy World, LLC, *by:*

|  | 4/16/2021 | Stephanie Boyd | 04/16/2021 |
| --- | --- | --- | --- |
| Mr. Jordan Breslow | Date | Signature | Date |

*NOTE: Your signature only confirms your receipt of this letter, not your agreement to its contents.*

Stephanie Boyd
Printed Name

* Accusing me of "gross Misconduct" when I removed myself from what I deemed unsafe conditions, that is relaliation. I performed my job, virtual meetings are applicable and many Solar Analysts use them. Cherry-picking items to slander me is relaliatory, I contacted HR and followed the letter of Employment Law, as I perceive them. EEOC compliant resolution should dictate leave, and pay restored This behavior makes me very upset, SEW has handled poorly.

Jordan Breslow



### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CHARGE OF DISCRIMINATION

For Official Use Only – Charge Number:
530-2021-02878

EEOC Form 5A (October 2017)

| **Personal Information** | First Name: Jordan          MI: I   Last Name: Breslaw<br>Address: 314 S. Henderson Rd                                    Apt.: 6103<br>City: King of Prussia   County: Montgomery   State: PA   Zip Code: 19406<br>Phone: 215-206-3562   Home ☐ Work ☐ Cell ☑   Email: jordanbreslaw93@gmail.com |
|---|---|
| **Who do you think discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐<br>Organization Name: Solar Energy World<br>Address: 5681 Main Street                                    Suite: _____<br>City: Elkridge   State: MD   Zip Code: 21075   Phone: 866-856-4586 |
| **Why you think you were discriminated against?** | Race ☐   Color ☐   Religion ☑   Sex ☐   National Origin ☐   Age ☐<br>Disability ☑   Genetic Information ☐   Retaliation ☐   Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of <u>most recent job action</u> you think was discriminatory: 4/26/2021<br>Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).<br>4/26/2021 – Wrongful Termination<br>4/16/2021 to 4/25/2021 – Reliatory character impeachment under the guise of an "investigatory leave"<br>4/13/2021 – Disability Discrimination, verbal beratement<br>4/12/2021 – Disability Discrimination, verbal beratement<br>4/1/2021 – Religious Discrimination, verbal beratement -4/2/2021 |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br>Signature: _JB_                                    Date: 5/18/2021 |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Issued October 2017.

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.

**Re: Question 1**

The format and setting of the meeting were virtual. I had a bad case of diarrhea and was frequently making trips to the bathroom. I did my best in my condition (I was ill) to inform my supervisor that I could not attend a virtual meeting. I did inform him before the start of the meeting. See below:



FILE COPY

CONFIDENTIAL

**Re: Question 2**

I was quite frankly in a state of upheaval. The weight of all the traumas inflicted on me by my
supervisor had become too much to bear and I felt my only option upon advice from friends and
family was to contact the EEOC and file a complaint. Additionally, an organizational chart was
never provided to me, to the best of my knowledge, and Geoff Mirkin's role was not abundantly
clear to me. Not that I was in the state to talk to anyone at Solar Energy World. The only option I
felt that was left open to me was to seek the protections and assistance of the EEOC in this
matter. I felt so victimized by my supervisor, all of SEW felt unsafe.

FILE COPY

CONFIDENTIAL

### Re: Question 3

I refer you back to my answer to Question 2. I would like to further add that these assertions of "significant financial loss" and "gross misconduct" both mentioned in this document and in the previous one I signed are intentional overestimations designed in a retaliatory sense to smear my character. After reviewing the Cornell law library online, the definition of gross misconduct includes things like employee theft and significant financial loss is also a strong term. Nothing of that sort occurred here. These terms are being deliberately misused to indict my character. After April 13th 2021, the date of my EEOC complaint and according to my reading of employment law, I had the right to remove myself from situations that I deemed unsafe and that I had made the appropriate regulatory authorities aware of.

CONFIDENTIAL

FILE COPY

**Re: Question 4**

I did not attend the meeting because I did not feel safe in my supervisor's presence. I wrote a formal letter to HR manager Stephanie Boyd and included the EEOC materials. This letter was dated April 14th 2021, and was sent via FedEx and is traceable. Once again given that it was after April 13th 2021, the protections afforded me under an EEOC complaint allow me to remove myself from situations in which I do not feel safe.

CONFIDENTIAL

 FILE COPY

**Re: Question 6**

As I will expand on later Mr. McColley's verbal abuse and the like, in my estimation, was escalating. I can only deal with things as I perceive them, and I did not wish to be continually verbally abused. I also have to assume that if things were escalating my very physical safety at some point might become at risk. There really was nobody to report this to at SEW. Human Resources is not housed on site in the Pennsauken NJ office, it's in Elkridge MD and my direct supervisor was Mr. McColley. How do you report abuse to your abuser? Additionally, I did report it to friends and family. Not to put too fine a point on it but you are talking about somebody who resorted to bigotry and hate in describing me. I was supposed to feel safe in the presence of somebody that used a racial slur to describe me? Someone who yelled at me and debased me, I was supposed to feel safe around that?

CONFIDENTIAL

FILE COPY

**Re: Question 7**

I am not here to give a history lesson, but I am a Jew. And I am proud of that. I have learned in my limited time on earth that when people reveal their true colors you have every right to be afraid. Mr. McColley used a vile word to describe me when he thought I was not listening, or I could not hear. As I stated in my prior answers, the only person it seemed to me to report this to would be Mr. McColley. Additionally, I was just shocked at what I had endured both in verbal abuse and in the bigotry, I felt hanging in the air. I cannot honestly think there is anybody who would want to return to an environment where they felt abuse against them was escalating and it had a prejudice behind it. Additionally, I have a documented learning disability and Mr. McColley had thrown that into his tirades of abuse. How much is a person expected to take? I felt attacked from every direction. I did not feel safe being put on leave because it had an air of retaliation behind it. SEW seemed to be concocting issues of performance in an attempt to smear me and thereby discredit me as well. I have overcome a lot in my life in terms of my disabilities and I am proud of how far I've come. There were people who told me I would not graduate college and people told me I would not graduate high school. I felt that that whole letter about my leave dated Friday April 16th 2021 was not designed in an effort to resolve the situation but intimidate me.

CONFIDENTIAL

FILE COPY

TOPIC 1: "On 4/1/2021 my direct supervisor, Will McColley verbally berated me from taking the

Passover (A Jewish Holiday) holiday off (a Saturday, 3/27/2021)"

    a.   With regard to Mr. McColley berating you, where did this occur?

       **-To my best recollection over the phone.**

b. Are there any other individuals with information about this incident?

     **-I told my fellow solar analyst Sean Grieves that Mr. McColley was extremely hard on me verbally and that I was alarmed at the vitriol given my religious affiliations.**

c. Was anyone else present when this occurred?

     **-No**

d. Did you tell anyone about this incident?

     **-My father and my good friend Matt Warden. Mr. Warden is of unimpeachable character he is a computer technology coordinator, graduate of the University of Pennsylvania, and soon to be attending the University of California Davis law school.**

e. Did you inform any supervisor of SEW of this incident?

     **-My supervisor was the offending party.**

CONFIDENTIAL

CONFIDENTIAL



TOPIC 2: Stating you were "further berated for asking and taking the next Saturday (4/3/2021)

for a memorial service marking the one year passing of my mother."

    a.  With regard to Mr. McColley "further berating" you, what is the date this occurred?

        **- Friday April 2nd, 2021**

b. Where did this occur?

    **-Over the phone, to the best of my recollection.**

c. Are there any other individuals with information about this incident?

    **-Not that I am aware.**

d. Was anyone else present when this occurred?

    **-No.**

e. Did you tell anyone about this incident?

    **- Again, my father and my friend Matt Warden.**

f. Did you inform any supervisor of SEW of this incident?

    **-Again, the offending party was my supervisor. I was not sure, at that time, of how
to proceed.**

CONFIDENTIAL

FILE COPY



TOPIC 3: "He further made comments about me having a nice car, a 'Jewish Ride' and I heard

him refer to it to a colleague when they thought I was out of earshot as a 'perfect car for a

kike.'"

    a.  What is the date this occurred?

      **- Wednesday March 31ˢᵗ 2021 during our weekly in person sales meeting in the**

      **Pennsauken NJ office.**

b. Where did this occur?

    **- In the Pennsauken NJ office.**

c. Who is the "colleague" that you have referenced?

    **- Joe Brenner**

d. Are there any other individuals with information about this incident?

    **-Not that I am aware. Not my place to say.**

e. Was anyone else present when this occurred?

    **-In theory all the solar analysts are present at the Wednesday meeting. But the bulk**
**of this occurred during what are termed "one on ones" (meetings to discuss individual**
**performance). Solar analysts come and go after the group compulsory part of the meeting**
**or speak to the crews about pending projects in other parts of the office.**

f. Did you tell anyone about this incident?

    **- Again, my father and my friend Matt Warden.**

g. Did you inform any supervisor of SEW of this incident?

    **-Again, initially I was not sure how to proceed as one of the offending parties was**
**my direct supervisor. I was so stunned by the gravity of the offense and I was at a loss as**
**how to proceed; like a deer in the headlights. Again my HR onsite and the like. As all the**
**offenses piled up, I sought advice and compiled my incidents and filed a complaint with the**
**EEOC. I believe part of what set off Mr. Brenner was my refusal to accept a donut because**

FILE COPY       CONFIDENTIAL

it was the Passover holiday and I could not eat leavened foods. He had brought them in for
the office and the meeting.

FILE COPY      CONFIDENTIAL

TOPIC 4: You have raised concerns about not being permitted to take off on Saturday. For your position as a Solar Analyst, Saturday is typically the busiest day of the week.

    a.  Were you made aware that your position required work on Saturday?

    **-Yes, but it was my assumption that for religious Holidays and/or religious occasions exemptions from work would be made. As is both customary and required under the law. I am not at issue with working Saturdays but I am at issue with working Holidays or other religious occasions of deep religious significance to me personally. I worked for SEW on Saturdays during my employment and conducted solar appointments as directed.**

b. Please identify all other Solar Analyst who you believe were treated more favorably because they were permitted to take off Saturdays.

    **-That is not the issue at play here (any kind of favoritism). The issue is the attempted denial and subsequent verbal berating that occurred because of the legitimate right to take off a holidays and/or occasions of religious significance. Also, my mother's memorial was of religious significance as for Jews a year after the passing a stone is unveiled to mark someone's grave in what is known as an "unveiling". As I am a Reform Jew it is permissible to do that on the Sabbath, which is a Saturday, in this case Saturday April the 3rd 2021.**

**FILE COPY**

CONFIDENTIAL

TOPIC 5: "On 4/12/2021 and 04/13/2021 my direct supervisor, Will McColley again verbally

berated me for failing to make sales when I referenced technology issues that stemmed from a

mental/learning disability he berated me further and with malice."

    a.   Where did this occur?

       **-Over the phone, to my best recollection.**

b. What are the "technology issues" that you have referenced?

       **-As a solar analyst, I was required to use many SunRun and DocuSign applications
that were often times confusing to me. Additionally, getting my computer to work in clients
homes or in different working environments.**

c. Are there any other individuals with information about this incident?

       **-Not that I'm aware of but once again that's not my place to know.**

d. Was anyone else present when this occurred?

       **-Not on my end of the call but I can't speak to my supervisor's end.**

e. Did you inform any supervisor of SEW of this incident?

       **- Again, HR is not on site and I was bewildered as to how to proceed given that the
offending party was my direct supervisor. Ultimately my bewilderment let me to seek
advice and finally file an EEOC complaint.**

f. To the extent you are seeking a reasonable accommodation for a "mental/learning

disability," please describe in full the accommodation you are seeking.

       **-Greater assistance and time with technological applications and an environment
free of hostility at difficulties with technological applications. These are all fair
accommodations under the Americans with Disabilities Act of 1990 and its subsequent
amendments.**

 

TOPIC 6: In SEW'S letter dated April 16, 2021, on page 2, in Point 6, SEW raised concerns regarding failure to carry out an assigned lead. In your response, in the left margin to Point 6, you wrote "4/13/2021 = EEOC Protection Not Relevant."

a.  Please explain your response further.

-As previously stated, anything after April 13th 2021 falls under the protection of my EEOC complaint. It is my right to remove myself from situations where I feel unsafe. I was referring to many points that attempted to assail my character based on my removal of myself from what I deemed to be unsafe conditions.

b. Why do you believe it is "not relevant" that SEW believes you were not performing your job duties?

-I performed my duties up until such point that I filed an EEOC complaint and availed myself of those protections. I didn't feel that it was relevant because they were not issues being raised about my job performance but instead retaliatory measures aimed at discrediting me. I always perform my job to the best of my abilities prior to the EEOC complaint. Even under what I have revealed, which can certainly be deemed a "hostile work environment and conditions".

FILE COPY                                      CONFIDENTIAL

TOPIC 7: In your response to SEW's April 16, 2021 letter, on page 4 you wrote "I don't feel safe,

I have a right to remove myself from unsafe conditions."

    a.  Explain why you did not feel safe.

        **-I stated this in previous answers and I do not feel I need to belabor the point.**

b. Identify everyone at SEW to whom you expressed a concern about not feeling safe.

        **-As previously stated, there was no one to express this too as HR was not on site. Additionally, I was in a state of shock and upheaval as how to deal with this given the gravity of what was place before me in terms of all the incidents. Additionally, my direct supervisor was also the offending party as previously stated.**

c. What is the date that you "removed yourself" from the "unsafe conditions"?

        **-The EEOC complaint was filed on the evening of April 13th, 2021 and I drafted my letter to Stephanie Boyd in the Human Resources Department on the early morning of April 14th 2021. That is the point at which I felt things had reached such a point as that I was not safe in my own estimation to return to the Pennsauken NJ office.**

Additionally, Stephanie Boyd (HR Manager) has my response, in writing and should on file, to my termination.

I afforded myself the protections of an EEOC inquiry and removed myself from a hostile work Environment where I did feel safe or comfortable. From 4/13/2021 on.

Solar Energy World response was reliatory, creating bogus "poor performance" claims and terminated me wrongfully and without case. With my EEOC Inquiry/complaint still open and unresolved.

I await my interview.

*Jordan Bresh*