

# SolarEnergyWorld
### *Because Tomorrow Matters*

April 23, 2021

Mr. Jordan Breslow
314 S Henderson RD
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

Re:    Questions in Response to EEOC Inquiry
<u>PRIVILEGED AND CONFIDENTIAL</u>

Dear Mr. Breslow:

On or about April 15, 2021, you sent a FedEx package to SEW containing various documents related to an EEOC Inquiry. In your EEOC Inquiry, you raise allegations relating to your supervisor, including allegations that you believe he discriminated against you on the basis of religion and disability. SEW takes your EEOC Inquiry seriously.

Prior to receipt of your EEOC Inquiry, SEW had not received any information from you relating to these issues; and it has not received any further information from you since that time. The purpose of this letter, and the questions below, is to gain a complete understanding of your EEOC Inquiry and to address all of the issues you have raised.

In your email of April 16, 2021, you requested that follow up communications with you "be done over email." In accordance with this request, SEW is now sending you these questions via email.

Each set of questions listed below is presented on a separate page in order to provide you sufficient space to provide your response. If you should need additional room, please attach additional pages.

**Please provide SEW with your responses to the below questions by close of business on <u>Monday, April 26, 2021</u>.** Your response can be submitted via email to Stephanie Boyd, sboyd@solarenergyworld.com. If you need additional time beyond April 26, please let us know.

(Questions begin on next page.)

Mr. Jordan Breslow
April 23, 2021
Page 2 of 9

**TOPIC 1:** "On 4/1/2021 my direct supervisor, Will McColley verbally berated me from taking the Passover (A Jewish Holiday) holiday off (a Saturday, 3/27/2021)"

    a.      With regard to Mr. McColley berating you, where did this occur?

    b.      Are there any other individuals with information about this incident?

    c.      Was anyone else present when this occurred?

    d.      Did you tell anyone about this incident?

    e.      Did you inform any supervisor of SEW of this incident?

Mr. Jordan Breslow
April 23, 2021
Page 3 of 9

**TOPIC 2:** Stating you were "further berated for asking and taking the next Saturday (4/3/2021) for a memorial service marking the one year passing of my mother."

a.      With regard to Mr. McColley "further berating" you, what is the date this occurred?

b.      Where did this occur?

c.      Are there any other individuals with information about this incident?

d.      Was anyone else present when this occurred?

e.      Did you tell anyone about this incident?

f.      Did you inform any supervisor of SEW of this incident?

Mr. Jordan Breslow
April 23, 2021
Page 4 of 9

**TOPIC 3:** "He further made comments about me having a nice car, a 'Jewish Ride' and I heard him refer to it to a colleague when they thought I was out of earshot as a 'perfect car for a kike.'"

    a.      What is the date this occurred?

    b.      Where did this occur?

    c.      Who is the "colleague" that you have referenced?

    d.      Are there any other individuals with information about this incident?

    e.      Was anyone else present when this occurred?

    f.      Did you tell anyone about this incident?

    g.      Did you inform any supervisor of SEW of this incident?

Mr. Jordan Breslow
April 23, 2021
Page 5 of 9

**TOPIC 4:** You have raised concerns about not being permitted to take off on Saturday. For your position as a Solar Analyst, Saturday is typically the busiest day of the week.

    a.  Were you made aware that your position required work on Saturday?

    b.  Please identify all other Solar Analyst who you believe were treated more favorably because they were permitted to take off Saturdays.

Mr. Jordan Breslow
April 23, 2021
Page 6 of 9

**TOPIC 5:** "On 4/12/2021 and 04/13/2021 my direct supervisor, Will McColley again verbally berated me for failing to make sales when I referenced technology issues that stemmed from a mental/learning disability he berated me further and with malice."

    a.    Where did this occur?

    b.    What are the "technology issues" that you have referenced?

    c.    Are there any other individuals with information about this incident?

    d.    Was anyone else present when this occurred?

    e.    Did you inform any supervisor of SEW of this incident?

    f.    To the extent you are seeking a reasonable accommodation for a "mental/learning disability," please describe in full the accommodation you are seeking.

Mr. Jordan Breslow
April 23, 2021
Page 7 of 9

**TOPIC 6:** In SEW'S letter dated April 16, 2021, on page 2, in Point 6, SEW raised concerns regarding failure to carry out an assigned lead.  In your response, in the left margin to Point 6, you wrote "4/13/2021 = EEOC Protection   Not Relevant."

    a.  Please explain your response further.


    b.  Why do you believe it is "not relevant" that SEW believes you were not performing your job duties?

Mr. Jordan Breslow
April 23, 2021
Page 8 of 9

**TOPIC 7**: In your response to SEW's April 16, 2021 letter, on page 4 you wrote "I don't feel safe, I have a right to remove myself from unsafe conditions."

    a.  Explain why you did not feel safe.

    b.  Identify everyone at SEW to whom you expressed a concern about not feeling safe.

    c.  What is the date that you "removed yourself" from the "unsafe conditions"?

Mr. Jordan Breslow
April 23, 2021
Page 9 of 9

I, Jordan Breslow, affirm that the responses I have provided to the above questions are true and accurate:

_____        _____
Jordan Breslow                                          Date

 SolarEnergyWorld
*Because Tomorrow Matters*

COPY

April 16, 2021

**VIA FEDEX**
Mr. Jordan Breslow
314 S. Henderson RD
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

> Re:    Investigatory Leave
>        <u>PRIVILEGED AND CONFIDENTIAL</u>

Dear Mr. Breslow:

This letter is to inform you that you are being placed on investigatory leave, effective immediately, for all purposes and from your position with Solar Energy World, LLC ("SEW").

**A.    INVESTIGATORY LEAVE**

SEW will be investigating various issues described herein, including, but not limited to, incidents related to reports of gross misconduct and dereliction of your primary job duties. SEW cannot permit you to continue performing work, engaging with co-workers, and interacting with homeowners (all required aspects of your position) until it has had the opportunity to investigate these and any related matters. If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, including terminating your services, during the investigatory leave.

**B.    GENERAL DESCRIPTION OF ALLEGED CONDUCT**

The general basis for your placement on leave is the Performance Related Issues described below. This investigation is in its initial stage, and the basis may change or modify as the investigation continues. SEW has not made any determination with regard to any of the below allegations, and is only investigating these issues at this stage.

**Performance Related Issues:**

1. Your employment commenced on March 15, 2021.
2. You were scheduled to attend a mandatory meeting on April 12, 2021 at 9:00 a.m.  At approximately 8:57 a.m., three minutes prior to the meeting start time, you communicated that you would not attend the meeting.

Mr. Jordan Breslow
April 16, 2021
Page 2 of 5

COPY

3. Since April 13, 2021, SEW has been generally unable to establish communication with you. Indeed, it is believed that you may have abandoned your position as of April 13.

4. On April 14, 2021, you failed to attend a weekly sales meeting. Your supervisor, Will McColley, was unable to contact you, and you did not respond to his message.

5. As a Solar Analyst, handling and carrying out sales leads is the primary duty of your job. You had a sales lead scheduled for April 14, 2021 at 5:00 p.m. When Mr. McColley was unable to establish communication with you, Mr. McColley attempted to confirm and handle the lead himself. Ultimately, the lead was lost, which appears largely attributable to your failure to communicate. This may have resulted in a significant financial loss to the company byway of losing the sale of a residential solar system to a homeowner.

6. On April 15, 2021, another significant sales lead issue arose. The customer has reported to SEW that an in-home sales meeting was confirmed, that then you attempted to change it to a virtual-meeting, and that you then never followed up any further. This lead appears to have now been lost which, again, may have potentially caused a significant financial loss to the company byway of losing the sale of another residential solar system.

Points 1-6, above, are collectively referred to herein as "Performance Related Issues."

**Investigation of EEOC Inquiry**

Equal Opportunity Employer: SEW is an equal opportunity employer and is committed to equal opportunity without regard to an employee's actual or perceived race, religion, color, sex (including pregnancy), age, ancestry, national origin, citizenship, disability, marital status, sexual orientation, gender identity, genetic information, or any other basis of discrimination prohibited by applicable local, state or federal law. This policy applies to all terms and conditions of employment, including, but not limited to, the following: (1) recruitment, hiring, placement, transfer, promotion, and demotion; (2) training and development; (3) compensation and benefits; (4) educational, social and recreational programs; (5) discipline; and (6) termination of employment. Employment decisions, subject to the legitimate business requirements of SEW, are based solely on an individual's qualifications, merits, behavior and performance.

Americans with Disabilities Act: SEW also complies with the Americans with Disabilities Act (ADA), as well as state and local laws, in ensuring equal employment opportunities for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis. Qualified individuals with disabilities are entitled to be treated equally

Mr. Jordan Breslow
April 16, 2021
Page 3 of 5



with other employees in terms of pay, benefits, and other forms of compensation (or changes in compensation), as well as in opportunities, assignments, classifications and position descriptions. SEW is also committed to not discriminating against any qualified employees or applicants because they have a history of having a disability, are related to or associated with a person with a disability, or are regarded as having a disability.

Policy Against Retaliation: Any employee, who, in good faith, files a complaint or participates in a related investigation, may not be subjected to reprisal or retaliation as a result of filing the complaint or participating in the investigation. Those involved in investigating the incident will make every effort to strike a balance between the parties' desires for privacy and the need to conduct a fair and effective investigation. Violation of the EEOC or ADA policies described above may subject the violating employee to disciplinary action, up to and including termination. Likewise, there may be disciplinary measures or termination if, in fact, it is determined that the reported incident and/or accusations were fabricated.

Your EEOC Inquiry: On or about April 15, 2021, you sent a FedEx package to SEW containing the following:

1. 5-page document with a submission date of 4/13/2021 and entitled "EEOC (INQUIRY) NUMBER: 530-2021-02878";
2. 2-page document dated 4/13/21 and entitled "Your Appointment is Scheduled"; and
3. 32-page document, marked "confidential," entitled "Report of Psycho-Educational Evaluation," and which appears to be from on or around June of 2010 and from the time you were 16 years old.

The documents described above are collectively referred to as "EEOC Inquiry." Prior to receipt of the EEOC Inquiry, SEW is unaware of previously receiving any other information, complaints, or concerns from you relating to any of the issues described therein.

In your EEOC Inquiry, you assert allegations relating to your supervisor, including allegations that you believe he discriminated against you on the basis of religion and disability. SEW takes your EEOC Inquiry seriously. Your EEOC Inquiry will be reviewed and we anticipate that we will contact you in order to obtain additional information. In the interim, please direct all correspondence and inquires relating to the EEOC Inquiry to Stephanie Boyd, Director of Human Resources (sboyd@solarenergyworld.com).

In your EEOC Inquiry, you allege that the illegal actions begun on April 1, 2021, approximately two-weeks after your employment begun. As noted, your EEOC Inquiry (received on April 15,

Mr. Jordan Breslow
April 16, 2021
Page 4 of 5

*COPY*

2021) was the first notice SEW received of any of the concerns described therein.  In addition, it appears that immediately after submitting your EEOC inquiry on or about April 13 with the EEOC, you discontinued performing all of your required job responsibilities and ceased communicating with your supervisor (despite his multiple attempts to contact you).  *See* Performance Related Issues, described above.

**C.     DURING INVESTIGATION**

During the investigatory leave period, you: (1) are relieved of all of your duties at SEW and shall not perform any work; (2) are not permitted to enter SEW offices; (3) may not communicate with any employees, customers, potential customers, leads, vendors, sales representatives, or subcontractors of SEW; (4) may not access work email or systems; and (5) may not engage in any conduct intended to interfere with SEW's investigation.

SEW will endeavor to promptly compete this investigation by approximately **April 26, 2021.** However, due to the seriousness and potential complexity of this matter, your investigatory leave may be extended at SEW's discretion and as necessary.

**SEW requests that you make yourself reasonably available during your leave in order to participate in any investigative interviewing that may be requested and to ensure SEW can complete its investigation in a timely manner.  SEW may email you a written questionnaire to complete and provide additional information on the issues described herein.  If you do not make yourself available or respond to SEW's emails, SEW will proceed with the investigation and make a determination based on the information available.**

At the commencement of this leave, you must immediately return all SEW property, including: (1) company computer; (2) company phone; (3) other company electronic equipment; (4) keys; (5) company files; (6) company records; and (7) any other similar or related SEW property that is in your possession. You are instructed to not delete any emails, text messages, documents and/or other relevant materials created during your time as an SEW sales representative.

You will be paid through today (despite a concern that you abandoned your position as of April 13). However, because you are under review for Performance Related Issues that potentially constitute gross misconduct, your leave will be without pay. If the investigation does not indicate disciplinary action is warranted and you agree to return to your prior position, then you will be paid for the time missed while on investigatory leave.  If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, up to and including termination, during the investigatory leave.

Mr. Jordan Breslow
April 16, 2021
Page 5 of 5

*COPY*

We appreciate your cooperation in this matter and hope that the situation will be resolved in a manner that is satisfactory to all parties involved.

Solar Energy World, LLC, *by:*

_____          *Stephanie Boyd*          04/16/2021 .
Mr. Jordan Breslow              Date      Signature                        Date
*NOTE: Your signature only confirms your receipt of*
*this letter, not your agreement to its contents.*

                                          Stephanie Boyd
                                          _____
                                          Printed Name

 SolarEnergyWorld
*Because Tomorrow Matters*

[ **COPY**

April 27, 2021

Mr. Jordan Breslow
314 S Henderson Road
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

Re:   Notice of Termination
      PRIVILEGED AND CONFIDENTIAL

Dear Mr. Breslow:

As you know, you were placed on investigatory leave on April 16, 2021 by Solar Energy World,
LLC ("SEW"). SEW has completed its investigation and identified various instances of
misconduct, including, but not limited to, insubordination, failure to perform job duties, failure
to communicate, and/or job abandonment. Accordingly, your employment with SEW is being
terminated, effective immediately.

A Form W-2 will be mailed to your home address in the normal course. If you need to report a
change of address, please contact the human resources office.

If you should have any questions, please do not hesitate to contact me.

Sincerely,

Stephanie Boyd
Director of Human Resource

**Employee Signature:** _____
                        (Acknowledges Receipt Only)                    **Date**

**Employee Comments:**_____

_____

_____

**(Additional comments may be added on separate paper.)**

**Affidavit**

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF MONTGOMERY

The undersigned, MATTHEW WARDEN, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the Commonwealth of Pennsylvania. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.

3. Jordan Breslow discussed with me frequently in April 2021 the issues and discriminatory actions he was suffering in this employment with Solar Energy World. He discussed his direct supervisor and some co-workers in detail. Having known him for many years I'm familiar with his learning/mental disability and his religious background. As a working professional and an aspiring law student, I was frankly appalled at the accounts that Jordan relayed to me. I could plainly see the effects of this work environment on this mental state and quality of life. I will make myself available, if necessary, for further interviews and sworn statements.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this 14 day of June , 20 21 .

Matthew Warden

## NOTARY ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF MONTGOMERY, ss:

On this _14th_ day of _June_, _2021_, before me, _Rafeek T. McEachin_ personally appeared Matthew Warden, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within Affidavit, and, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rafeek T. McEachin, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Oct. 10, 2021
Member, Pennsylvania Association of Notaries

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

_____
Title (and Rank)

My commission expires _10/10/2021_

Notary Address:
_1735 Market St_
_Suite A_
_Philadelphia PA_
_19103_

### Re: Question 1

The format and setting of the meeting were virtual. I had a bad case of diarrhea and was frequently making trips to the bathroom. I did my best in my condition (I was ill) to inform my supervisor that I could not attend a virtual meeting. I did inform him before the start of the meeting. See below:



**Re: Question 2**

I was quite frankly in a state of upheaval. The weight of all the traumas inflicted on me by my supervisor had become too much to bear and I felt my only option upon advice from friends and family was to contact the EEOC and file a complaint. Additionally, an organizational chart was never provided to me, to the best of my knowledge, and Geoff Mirkin's role was not abundantly clear to me. Not that I was in the state to talk to anyone at Solar Energy World. The only option I felt that was left open to me was to seek the protections and assistance of the EEOC in this matter. I felt so victimized by my supervisor, all of SEW felt unsafe.

FILE COPY

CONFIDENTIAL

**Re: Question 3**

I refer you back to my answer to Question 2. I would like to further add that these assertions of "significant financial loss" and "gross misconduct" both mentioned in this document and in the previous one I signed are intentional overestimations designed in a retaliatory sense to smear my character. After reviewing the Cornell law library online, the definition of gross misconduct includes things like employee theft and significant financial loss is also a strong term. Nothing of that sort occurred here. These terms are being deliberately misused to indict my character. After April 13th 2021, the date of my EEOC complaint and according to my reading of employment law, I had the right to remove myself from situations that I deemed unsafe and that I had made the appropriate regulatory authorities aware of.

CONFIDENTIAL

FILE COPY

## Re: Question 4

I did not attend the meeting because I did not feel safe in my supervisor's presence. I wrote a formal letter to HR manager Stephanie Boyd and included the EEOC materials. This letter was dated April 14th 2021, and was sent via FedEx and is traceable. Once again given that it was after April 13th 2021, the protections afforded me under an EEOC complaint allow me to remove myself from situations in which I do not feel safe.

CONFIDENTIAL

FILE COPY

**Re: Question 6**

As I will expand on later Mr. McColley's verbal abuse and the like, in my estimation, was escalating. I can only deal with things as I perceive them, and I did not wish to be continually verbally abused. I also have to assume that if things were escalating my very physical safety at some point might become at risk. There really was nobody to report this to at SEW. Human Resources is not housed on site in the Pennsauken NJ office, it's in Elkridge MD and my direct supervisor was Mr. McColley. How do you report abuse to your abuser? Additionally, I did report it to friends and family. Not to put too fine a point on it but you are talking about somebody who resorted to bigotry and hate in describing me. I was supposed to feel safe in the presence of somebody that used a racial slur to describe me? Someone who yelled at me and debased me, I was supposed to feel safe around that?

CONFIDENTIAL

FILE COPY

## Re: Question 7

I am not here to give a history lesson, but I am a Jew. And I am proud of that. I have learned in my limited time on earth that when people reveal their true colors you have every right to be afraid. Mr. McColley used a vile word to describe me when he thought I was not listening, or I could not hear. As I stated in my prior answers, the only person it seemed to me to report this to would be Mr. McColley. Additionally, I was just shocked at what I had endured both in verbal abuse and in the bigotry, I felt hanging in the air. I cannot honestly think there is anybody who would want to return to an environment where they felt abuse against them was escalating and it had a prejudice behind it. Additionally, I have a documented learning disability and Mr. McColley had thrown that into his tirades of abuse. How much is a person expected to take? I felt attacked from every direction. I did not feel safe being put on leave because it had an air of retaliation behind it. SEW seemed to be concocting issues of performance in an attempt to smear me and thereby discredit me as well. I have overcome a lot in my life in terms of my disabilities and I am proud of how far I've come. There were people who told me I would not graduate college and people told me I would not graduate high school. I felt that that whole letter about my leave dated Friday April 16th 2021 was not designed in an effort to resolve the situation but intimidate me.

CONFIDENTIAL


FILE COPY

TOPIC 1: "On 4/1/2021 my direct supervisor, Will McColley verbally berated me from taking the

Passover (A Jewish Holiday) holiday off (a Saturday, 3/27/2021)"

    a.   With regard to Mr. McColley berating you, where did this occur?

        **-To my best recollection over the phone.**

b. Are there any other individuals with information about this incident?

    **-I told my fellow solar analyst Sean Grieves that Mr. McColley was extremely hard on me verbally and that I was alarmed at the vitriol given my religious affiliations.**

c. Was anyone else present when this occurred?

    **-No**

d. Did you tell anyone about this incident?

    **-My father and my good friend Matt Warden. Mr. Warden is of unimpeachable character he is a computer technology coordinator, graduate of the University of Pennsylvania, and soon to be attending the University of California Davis law school.**

e. Did you inform any supervisor of SEW of this incident?

    **-My supervisor was the offending party.**

CONFIDENTIAL

CONFIDENTIAL

FILE COPY

TOPIC 2: Stating you were "further berated for asking and taking the next Saturday (4/3/2021)

for a memorial service marking the one year passing of my mother."

   a.   With regard to Mr. McColley "further berating" you, what is the date this occurred?

        - **Friday April 2nd, 2021**

b. Where did this occur?

        **–Over the phone, to the best of my recollection.**

c. Are there any other individuals with information about this incident?

        **–Not that I am aware.**

d. Was anyone else present when this occurred?

        **–No.**

e. Did you tell anyone about this incident?

        **- Again, my father and my friend Matt Warden.**

f. Did you inform any supervisor of SEW of this incident?

        **–Again, the offending party was my supervisor. I was not sure, at that time, of how**

to proceed.

CONFIDENTIAL

FILE COPY

FILE COPY                    CONFIDENTIAL

TOPIC 3: "He further made comments about me having a nice car, a 'Jewish Ride' and I heard

him refer to it to a colleague when they thought I was out of earshot as a 'perfect car for a

kike.'"

    a.  What is the date this occurred?

      - **Wednesday March 31st 2021 during our weekly in person sales meeting in the
Pennsauken NJ office.**

b. Where did this occur?

    - **In the Pennsauken NJ office.**

c. Who is the "colleague" that you have referenced?

    - **Joe Brenner**

d. Are there any other individuals with information about this incident?

    **-Not that I am aware. Not my place to say.**

e. Was anyone else present when this occurred?

    **-In theory all the solar analysts are present at the Wednesday meeting. But the bulk
of this occurred during what are termed "one on ones" (meetings to discuss individual
performance). Solar analysts come and go after the group compulsory part of the meeting
or speak to the crews about pending projects in other parts of the office.**

f. Did you tell anyone about this incident?

    - **Again, my father and my friend Matt Warden.**

g. Did you inform any supervisor of SEW of this incident?

    **-Again, initially I was not sure how to proceed as one of the offending parties was
my direct supervisor. I was so stunned by the gravity of the offense and I was at a loss as
how to proceed; like a deer in the headlights. Again my HR onsite and the like. As all the
offenses piled up, I sought advice and compiled my incidents and filed a complaint with the
EEOC. I believe part of what set off Mr. Brenner was my refusal to accept a donut because**

FILE COPY          CONFIDENTIAL

it was the Passover holiday and I could not eat leavened foods. He had brought them in for the office and the meeting.

FILE COPY   CONFIDENTIAL

TOPIC 4: You have raised concerns about not being permitted to take off on Saturday. For your position as a Solar Analyst, Saturday is typically the busiest day of the week.

    a. Were you made aware that your position required work on Saturday?

      -Yes, but it was my assumption that for religious Holidays and/or religious occasions exemptions from work would be made. As is both customary and required under the law. I am not at issue with working Saturdays but I am at issue with working Holidays or other religious occasions of deep religious significance to me personally. I worked for SEW on Saturdays during my employment and conducted solar appointments as directed.

b. Please identify all other Solar Analyst who you believe were treated more favorably because they were permitted to take off Saturdays.

    -That is not the issue at play here (any kind of favoritism). The issue is the attempted denial and subsequent verbal berating that occurred because of the legitimate right to take off a holidays and/or occasions of religious significance. Also, my mother's memorial was of religious significance as for Jews a year after the passing a stone is unveiled to mark someone's grave in what is known as an "unveiling". As I am a Reform Jew it is permissible to do that on the Sabbath, which is a Saturday, in this case Saturday April the 3rd 2021.