**FILE COPY**

**CONFIDENTIAL**

TOPIC 5: "On 4/12/2021 and 04/13/2021 my direct supervisor, Will McColley again verbally

berated me for failing to make sales when I referenced technology issues that stemmed from a

mental/learning disability he berated me further and with malice."

    a.   Where did this occur?

       **-Over the phone, to my best recollection.**

b. What are the "technology issues" that you have referenced?

       **-As a solar analyst, I was required to use many SunRun and DocuSign applications
that were often times confusing to me. Additionally, getting my computer to work in clients
homes or in different working environments.**

c. Are there any other individuals with information about this incident?

       **-Not that I'm aware of but once again that's not my place to know.**

d. Was anyone else present when this occurred?

       **-Not on my end of the call but I can't speak to my supervisor's end.**

e. Did you inform any supervisor of SEW of this incident?

       **- Again, HR is not on site and I was bewildered as to how to proceed given that the
offending party was my direct supervisor. Ultimately my bewilderment let me to seek
advice and finally file an EEOC complaint.**

f. To the extent you are seeking a reasonable accommodation for a "mental/learning

disability," please describe in full the accommodation you are seeking.

       **-Greater assistance and time with technological applications and an environment
free of hostility at difficulties with technological applications. These are all fair
accommodations under the Americans with Disabilities Act of 1990 and its subsequent
amendments.**

FILE COPY  CONFIDENTIAL

TOPIC 6: In SEW'S letter dated April 16, 2021, on page 2, in Point 6, SEW raised concerns regarding failure to carry out an assigned lead. In your response, in the left margin to Point 6, you wrote "4/13/2021 = EEOC Protection Not Relevant."

   a.  Please explain your response further.

      -As previously stated, anything after April 13th 2021 falls under the protection of my EEOC complaint. It is my right to remove myself from situations where I feel unsafe. I was referring to many points that attempted to assail my character based on my removal of myself from what I deemed to be unsafe conditions.

b. Why do you believe it is "not relevant" that SEW believes you were not performing your job duties?

      -I performed my duties up until such point that I filed an EEOC complaint and availed myself of those protections. I didn't feel that it was relevant because they were not issues being raised about my job performance but instead retaliatory measures aimed at discrediting me. I always perform my job to the best of my abilities prior to the EEOC complaint. Even under what I have revealed, which can certainly be deemed a "hostile work environment and conditions".

**FILE COPY**                                    **CONFIDENTIAL**

TOPIC 7: In your response to SEW's April 16, 2021 letter, on page 4 you wrote "I don't feel safe,

I have a right to remove myself from unsafe conditions."

    a.  Explain why you did not feel safe.

        -I stated this in previous answers and I do not feel I need to belabor the point.

b. Identify everyone at SEW to whom you expressed a concern about not feeling safe.

        -As previously stated, there was no one to express this too as HR was not on site. Additionally, I was in a state of shock and upheaval as how to deal with this given the gravity of what was place before me in terms of all the incidents. Additionally, my direct supervisor was also the offending party as previously stated.

c. What is the date that you "removed yourself" from the "unsafe conditions"?

        -The EEOC complaint was filed on the evening of April 13th, 2021 and I drafted my letter to Stephanie Boyd in the Human Resources Department on the early morning of April 14th 2021. That is the point at which I felt things had reached such a point as that I was not safe in my own estimation to return to the Pennsauken NJ office.

Civil Action No. RDB-19-1993

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

# Lee v. Solar Energy World, LLC

Decided Mar 10, 2021

Civil Action No. RDB-19-1993

03-10-2021

JUSTIN LEE, et al., Plaintiffs, v. SOLAR ENERGY WORLD, LLC, et al., Defendants.

Richard D. Bennett United States District Judge

## MEMORANDUM OPINION

Plaintiffs Justin Lee, Kanayo Okeke, Garrett Ellenberger, Christopher Riley, Jordan Jackson, Dustin Hamann, Darrin Johnson, Jr., Jeffrey Williams, Evelio Rodriguez, Ryan Maggio, Evan Christensen, Michael Winson, Kevone Richardson, and Oscar Mazariegos-Flores (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, bring this action against Defendants Solar Energy World, LLC ("Solar Energy World"), Tope Lala ("Lala"), Aloysius E. Gleeson ("Gleeson"), and Geoff Mirkin ("Mirkin") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* (ECF No. 5.)[1]

2    Currently pending before this *2 Court is the Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice. (ECF No. 18.)[2]

[1]    Plaintiffs' Amended Complaint (ECF No. 5) was filed on September 5, 2019 with consent of the named Plaintiffs to join this collective action. On July 29, 2020,

Plaintiffs filed a line to add three additional consents to join the collective action (ECF No. 22).

[2]    Also pending is the Defendants' Motion for Leave to File Sur-reply (ECF No. 25). This Court GRANTS the Defendants' Motion and has taken the Sur-reply (ECF No. 26) into consideration in this matter. ———

The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice (ECF No. 18) is GRANTED IN PART and DENIED IN PART. Specifically, a collective action is conditionally certified for a class consisting of **all individuals who work or worked as an electrician or installer at Solar Energy World's Maryland facility and worked more than 40 hours in a workweek without being paid overtime at any time from December 19, 2017 to present.**

## BACKGROUND

In the context of the pending motion, this Court "accept[s] as true all well-pleaded facts in [the] complaint and construe[s] them in the light most favorable to the plaintiff." *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Plaintiffs in this case were each employed by Defendant Solar Energy World in 2017 and 2018. (ECF No. 5 ¶¶ 5-17.) Solar Energy World is in the business of installing solar panel systems in and around Maryland, Washington, D.C.,

Lee v. Solar Energy World, LLC    Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

Pennsylvania, and New Jersey. (*Id.* ¶ 19.) The company is run by President and owner Tope Lala, Chief Executive Officer and owner Geoff Mirkin, and member, owner, and/or officer Al Gleeson. (*Id.* ¶¶ 20-22.) *3

Solar Energy World hires "Solar Installers" and "Company Electricians" to install solar panels purchased from the company at the purchaser's requested location. (*Id.* ¶ 31.) The Defendants typically hire these electricians and installers at an hourly rate, however, the Defendants, at their discretion, retain the ability to convert the electricians' and installers' payment to paying per panel installed ("Panel Pay"). (*Id.* ¶ 33.) Plaintiffs allege that the Defendants pay electricians and installers the lesser of the hourly pay rate and the Panel Pay rate. (*Id.*)

On a typical workday, installers and electricians employed by Solar Energy World's Maryland facility physically report, as required, to the Elkridge, Maryland company headquarters at 6:00 a.m., where they receive their job assignments for the day. (*Id.* ¶ 34.) The electricians and installers then load their vehicles with the necessary supplies and drive to their assigned installation sites, which are allegedly often at least one hour away. (*Id.*) Electricians and installers typically stop work at their installation sites around 4:00 p.m., however, they sometimes continue working at the sites until 6:00 or 7:00 p.m. if the job can be completed within the day. (*Id.* ¶ 35.) The electricians and installers then drive back to the headquarters in Elkridge, Maryland to return the company's vehicles. (*Id.* ¶ 36.) Some job assignments require installers to work multiple days on one site and/or on weekends. (*Id.* ¶¶ 34, 37.)

According to the Plaintiffs, the Defendants consider the workday of electricians and installers to begin at 6:00 a.m. and to end at 4:00 p.m., for a total of ten hours per day. (*Id.* ¶ 35.) The Defendants allegedly do not consider any time the individuals work past 4:00 p.m. at an installation

site and specifically instruct their electricians and installers not to include the time spent driving back to headquarters to return the company's vehicles on their daily time *4 sheets. (*Id.* ¶¶ 35-36, 41.) The Plaintiffs allege that between the minimum ten-hours days, weekend shifts, and time spent driving back to headquarters at the end of each day, electricians and installers are often subjected to working 70 hours, or more, each week. (*Id.* ¶ 38.)

Plaintiffs, all hired as electricians or installers by Solar Energy World's Maryland facility, allege that despite their work weeks being in excess of 40 hours, they did not receive overtime payments. (*Id.* ¶ 39.) They assert that when they inquired about overtime, they were told that the company did not pay overtime. (*Id.* ¶ 40.) They also allege that they did not perform any work that would qualify them as "exempt" employees under federal or Maryland law. (*Id.* ¶ 48.) Accordingly, on July 8, 2019, the Plaintiffs filed a Complaint against the Defendants. (ECF No.1.) The now operative Amended Complaint, filed September 5, 2019, asserts that in failing to properly compensate the Plaintiffs and others similarly situated for hours spent working, the Defendants have acted willfully and with reckless disregard of clearly applicable provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* (ECF No. 5.)

On April 25, 2020, the Plaintiffs filed the instant Motion for Conditional Collective Action Certification and Court-Facilitated Notice, seeking to conditionally certify a class consisting of "all individuals employed by Solar Energy World LLC, engaged in installing or assisting in installing solar panels for Solar Energy World, LLC, at any time during the period beginning three years prior to the date of commencement of this action, through the date of judgment." (ECF

casetext

Lee v. Solar Energy World, LLC    Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

No. 18-1.) With the onset of the global COVID-19 pandemic, the *5 Defendants were given an 84-day extension to file a response. *See* Standing Order 2020-07. On July 31, 2020, the Defendants filed a Response in Opposition to the Plaintiffs' motion, arguing that the Plaintiffs' request was overly broad in terms of the scope of employees they sought to be included in the class as well as in the temporal scope. (ECF No. 23.) On August 14, 2020, the Plaintiffs filed a Reply in which they agreed to some modifications of the original certification request, narrowing the scope to include solely the employees of the Defendants' Maryland facilities who worked more than 40 hours in a week without overtime pay. (ECF No. 24.) The parties, however, continue to disagree as to the proper temporal scope of the class and as to some details regarding the notice that should be provided to putative class members. (ECF Nos. 23, 24.)

## STANDARD OF REVIEW

Under the Fair Labor Standards Act ("FLSA"), a plaintiff may bring an action on behalf of himself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008); *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 605 (D. Md. 2020). As this Court previously noted, Section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). Section 216(b) provides, in relevant part, that:

An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*6 29 U.S.C. § 216(b).

Whether to grant conditional certification is left to the court's discretion. *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (stating that " [d]eterminations of the appropriateness of conditional collective action certification . . . are left to the court's discretion[]"); *see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). This Court employs a two-step inquiry when deciding whether to certify a collective action under the FLSA. *Syrja*, 756 F. Supp. 2d at 686; *Banks v. Wet Dog Inc.*, No. CIV.A. RDB-13-2294, 2015 WL 433631, at *1 (D. Md. Feb. 2, 2015). First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (internal citations omitted). The court then renders a final decision regarding the propriety of proceeding as a collective action. *Id.* The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a defendant's filing of a motion to decertify, and thus is referred to as the "decertification stage." *Syrja*, 756 F. Supp. 2d at 686.

## ANALYSIS

Lee v. Solar Energy World, LLC     Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

**A. Plaintiffs have sufficiently pled that they are similarly situated to other electricians and installers employed by the Maryland facility and who worked over 40 hours a week without overtime pay.**

The "paramount issue in determining the appropriateness of a conditional class certification is whether plaintiffs have demonstrated that potential class members are 'similarly *7 situated.'" *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008). Plaintiffs bear the burden of showing that their claims are "similarly situated," but courts have ruled that "similarly situated" need not mean "identical." *See, e.g., Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). This Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (citing *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008)).

A plaintiff's allegations thus "must consist of more than 'vague allegations' with 'meager factual support,' but [they] need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Mancia*, 2008 WL 4735344, at *2 (quoting *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995)). Plaintiffs may rely on "affidavits or other means" to make the required showing. *Williams*, 585 F. Supp. 2d at 683; *see also Bouthner v. Cleveland Const., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012); *Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *1-2 (D. Md. May 5, 2014). If, however, "sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate, . . . a court can . . . deny certification outright." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)).

Plaintiffs initially asserted that they and all employees of Solar Energy World involved in installations were similarly situated because they were subject to the same company-wide policy or practice of violating FLSA's overtime requirements paying electricians and installers per panel installed, rather than based on time spent on the job, traveling, and working at *8 headquarters. Specifically, the Plaintiffs alleged that (1) their job duties were substantially similar, if not the same; (2) Plaintiffs were paid a combination of hourly and Panel Pay; (3) Plaintiffs were not credited hours for return trips from their respective job sites despite being required by the Defendants to return the company's vehicles to headquarters; (4) were not paid overtime in an amount one and half times their hourly rate for hours worked in excess of 40 hours a week; and (5) plaintiffs had no control over where their assignments were located. (ECF No. 18-1 at 10.)

In opposition, the Defendants urged this Court to deny conditional certification of the Plaintiffs' proposed class, arguing that the description of those individuals "similarly situated" was overbroad in two respects. (ECF No. 23.) First, they argued that Plaintiffs' request for certification of a nationwide class including all electricians and installers at all Solar Energy World facilities should be denied, because the Plaintiffs had failed to demonstrate that any electricians or installers others than those who worked out of the Maryland facility were similarly situated to them. (*Id.*) Second, the Defendants argued that the class should additionally be limited to the electricians and installers "who worked in excess of 40 hours in a workweek and did not receive overtime compensation." (*Id.*) In response to the Defendants' opposition, the Plaintiffs agreed to modify their original request, and now seek to join a more limited scope of individuals, namely, "[a]ll individuals who work or worked as an electrician or installer at Solar Energy World's Maryland

Lee v. Solar Energy World, LLC    Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

facility and worked more than 40 hours in a workweek without being paid overtime." (ECF No. 24.)

A class of this scope is consistent with the decisions of this Court. With respect to limiting the class to those employed at the Maryland facility, such restriction is consistent with *9 this Court's opinion in *Faust v. Comcast Cable Comm'ns Mgmt., LLC*, No. WMN-10-2336, 2011 WL 5244421, at *4 (D. Md. Nov. 1, 2011). In *Faust*, the plaintiffs sought to conditionally certify a class of employees at eight of the defendants' Maryland call centers, however, the plaintiffs had failed to provide any concrete evidence demonstrating that employees at call centers other than the one at which the plaintiffs worked was subjected to the same allegedly improper policy. *Id.* Accordingly, this Court limited the class to the individuals employed at the single call center. *Id.* With respect to limiting the class to those who worked more than 40 hours a week without overtime pay, such limitation is again consistent with the decisions of this Court. For example, in *Baylor*, the class was defined as all "[i]ndividuals who work or worked in excess of 40 hours in a seven day workweek and did not receive compensation." 443 F. Supp. 3d at 608.

The Plaintiffs' new proposed conditional class is also at this time an accurate description of those who are similarly situated to the Plaintiffs. The Plaintiffs have offered no evidence that electricians and installers at Solar Energy World's other facilities have been subjected to the Defendants' alleged policy of not paying for driving time and overtime work. However, through their common allegations supported by affidavits, pay stubs, personal time logs, screen shots of text messages, and spreadsheets showing hours worked, the Plaintiffs have made the requisite showing that they and other employees at the Maryland facility were similarly situated as electricians and installers for Solar Energy World

and subject to the same alleged policy. The Plaintiffs' have met their burden to show that they are similarly situated to the proposed class. *10

**B. The collective action will be limited to those individuals who assert overtime claims and worked for the Defendants within three years of this Court's Order plus 81 days.**

In their pleadings (ECF Nos. 18, 24), the Plaintiffs have argued that the appropriate time period for certification of the class should date back three years prior to the date of the commencement of this case (July 8, 2019) or at least to the date on which they filed for conditional certification (April 25, 2020). However, the clear precedent of this Court is to look to the date of the granting of conditional collective action certification. The FLSA provides that in a collective action suit, the statute of limitations runs for each plaintiff until the plaintiff files a written consent opting into the suit. *See* 29 U.S.C. § 256(b). In practice, this typically means that the operative time period for certification of a class is the three-year period preceding the date that the court enters an order granting collective action certification. *See Baylor*, 443 F. Supp. 3d at 608 (defining conditional class to include those who met the class description in the three years prior to the date of the order granting conditional certification of the collective action); *see also Hernandez v. Immortal Rise, Inc.*, 11-CIV-4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. 2012) (noting that the notice period is generally measured from the date of the court's order granting the plaintiffs' motion for conditional certification).

However, this Court has the discretion to equitably toll limitations where "'extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted)). Courts have equitably tolled the statute of limitations in FLSA actions in cases involving unusual delays in

Lee v. Solar Energy World, LLC    Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

the court's consideration of a motion for conditional certification caused by the procedural posture of the *11 case. *See Harbourt v. PPE Casino Resorts Maryland, LLC*, Nos. CCB-14-3211, CCB-16-339, 2017 WL 281992, at *3 (D. Md. Jan. 23, 2017) (citing *Ruffin v. Entm't of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 28192, at *2 (N.D. W.Va. Jan 5, 2012)).

In this case, the unprecedented COVID-19 pandemic clearly prevented the Plaintiffs from obtaining certification of their collective action in the usual time period for such actions. The Plaintiffs filed their Motion for Conditional Collective Action Certification and Court-Facilitated Notice on April 25, 2020. (ECF No. 18.) Two weeks prior, on April 10, 2020, Chief Judge Bredar of this Court issued Standing Order 2020-07 in which this Court ordered that all filing deadlines in all cases originally set to fall between March 16, 2020, and June 5, 2020 were extended by 84 days. The Defendants took advantage of this extension, waiting 81 days past what would have been their original deadline to file their Response in Opposition on July 31, 2020. (ECF No. 23.) The Plaintiffs were in no part at fault for this delay, and therefore, this Court finds that the statute of limitations was tolled for that 81-day period. Accordingly, the conditional class will include all individuals who met the above defined description at any time three years prior to December 19, 2020, 81 days prior to this Memorandum Opinion. In other words, the collective action will include claims arising between December 19, 2017 and the present.

### C. Definition of the class.

Accordingly, for the reasons stated above, Plaintiffs' motion will be granted in part and denied in part, and this Court will conditionally certify a collection action consisting of **all individuals who work or worked as an electrician or installer at Solar Energy World's** *12 **Maryland facility and worked more than 40**

**hours in a workweek without being paid overtime at any time from December 19, 2017 to present.**

### D. Notice form.

The Plaintiffs have made a preliminary showing that the installers and electricians at Solar Energy World's Maryland facility who worked more than 40 hours a week without being paid overtime are "similarly situated," therefore, notice of this action will be provided to installers and electricians who currently work, or have worked Solar Energy World's Maryland facility since December 19, 2017. *See Butler*, 876 F. Supp. 2d at 574. Pursuant to the FLSA, a Notice of Collective Action "must provide accurate and timely notice to potential plaintiffs so they may make informed decisions about whether to join a collective action." *Arnold v. Acappella, LLC*, BPG-15-3001, 2016 WL 5454541, at *4 (D. Md. Sept. 29, 2016). However, "[t]he district court has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Id.* (citing *Mcfeeley v. Jackson St. Entm't, LLC*, DKC 12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). While the parties have made efforts to reconcile several of their disagreements as to the contents of the proposed Notice of Collective Action form, several issues regarding the proposed notice remain unresolved. The Court's determinations on these issues are addressed in turn below.

### 1. Defendants' will supply Plaintiffs with contact information for putative plaintiffs in fifteen days.

Plaintiffs request that the Defendants be required to produce within fifteen days a computer-readable database of names, last known addresses, e-mail addresses, and the dates of employment for all current and former electricians and installers *13 who have worked for Defendants at any point since three years before the date of the filing of this lawsuit. (ECF No. 24 at 7.) As this Court has determined that the appropriate temporal scope of

Lee v. Solar Energy World, LLC   Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

the conditional class will be three years prior to December 19, 2020, the Defendants will be required to produce only the above-listed information for individuals employed by the Maryland facility since December 19, 2017. "In keeping with this Court's previous notice procedures," the deadline for that disclosure will be within fifteen days of this Court's Order. *See Baylor*, 443 F. Supp. 3d at 608 (citing *Jones v. Fidelity Resources, Inc.*, RDB-17-1447, 2018 WL 656438, at *4 (D. Md. Feb. 1, 2018)). In sum, the Defendants are directed to provide Plaintiffs with the names and last known home and email addresses and dates of employment of all individuals employed at the Defendants' Maryland facility any point during the collective action period within fifteen days.

## 2. Notice will be posted at the Maryland facility.

Plaintiffs request that, in addition to being authorized to mail notice to employees, the Defendants should be required to post notice at their Maryland and New Jersey facilities in areas accessible to and easily viewed by the electricians and installers, as well as in the vehicles used by the electricians and installers to travel to their installation projects. (ECF No. 24 at 5.) This Court has often held that a requirement that the defendant post notice at a physical facility to which employees are required to report is appropriate. *See Baylor*, 443 F. Supp. 3d at 609; *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 577 (D. Md. 2014); *Willaims v. ezStorage Corp.*, No. RDB-10-3335, 2011 WL 1539941, at *5 (D. Md. Apr. 21, 2011). In light of the Plaintiffs' allegations that the electricians and installers of the Maryland facility are required to report to Solar Energy World's headquarters in Elkton, Maryland, physical posting *14 of the notice at the Maryland headquarters is appropriate. However, the Defendant will not be required to post notice at its other facilities outside Maryland, nor in the vehicles used by electricians and installers. This Court believes that posting notice

at the Maryland facility, in addition to mailing such notice, is sufficient to notify potential class members in this case.

## 3. Opt-in period with no reminder notice.

As noted by the Plaintiffs, the Defendants did not object to the 90-day opt-in period requested by the Plaintiffs. (ECF No. 24 at 2.) As this Court provided in *Baylor*, 90 days is the "standard" notice period for potential plaintiffs to opt-in, and in order for this Court to find another period is appropriate, the Defendants must provide a "persuasive basis to deviate" from the 90-day standard. 443 F. Supp. 3d at 609 (citing *Mendoza v. Mo's Fisherman Exchange, Inc.*, No. ELH-15-1427, at *20 (D. Md. June 22, 2016)). Given that the Defendants provided no such basis, the standard 90-day period is appropriate in this case. However, the Plaintiffs do not prevail on their request that they be allowed to send a reminder notice halfway through the 90-day opt-in period. As this Court also noted in *Baylor*, "a reminder notice is not necessary as such notices have the potential to 'stir up litigation.'" 443 F. Supp. 3d at 609 (citing *Calderon v. Geico General Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011)). Plaintiffs will be given the standard 90-day period for potential plaintiffs to opt-in, along with the ability to post the notice at Defendants' facility in Maryland. The Court is satisfied that these procedures will be sufficient to notify potential class members of their ability to opt-in. Accordingly, Plaintiffs are not authorized to issue a reminder notice.

## 4. Defense counsel's contact information may be included in some form. *15

The Plaintiffs agreed to include defense counsel's contact information on the notice, however, Plaintiffs objected to the format of the Defendants' proposed notice and opt-in form, which included such contact information under the heading "Questions." (ECF No. 24 at 6.) Inclusion of defense counsels' contact information in the notice is consistent with this Court's decisions ordering

🌿 casetext

Lee v. Solar Energy World, LLC     Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

the inclusion of similar contact information in other cases. *See Arevalo v. DJ's Underground, Inc.*, No. DKC-09-03199, 2010 WL 2639888, at *4 (D. Md. June 29, 2010). However, identifying defense counsel as a resource individuals may use to answer questions and provide information about this litigation may be confusing to potential plaintiffs. They may be led to believe that defense counsel would provide them with objective information and advice. As this Court is tasked with "ensur[ing] that potential plaintiffs are not misled about the consequences of joining a class in an ongoing employment dispute," *Aytch v. Trulife Health Servs., LLC*, No. ELH-17-2796, 2018 WL 1784461, at *5 (D. Md. April 12, 2018) (internal quotations and citations omitted), defense counsel's contact information should be presented in a manner that makes it clear to potential class members that the listed attorneys represent the *Defendants* and the *Defendants' interests*. This Court encourages the parties to use a format similar to that of the parties in *Baylor*, included in Plaintiffs' Reply. (ECF No. 24 at 6.)

**5. Language regarding court costs is not required.**

Finally, the Defendants in this case request that the notice include language informing putative plaintiffs that they may be assessed court costs and expenses if they choose to join the collective. (ECF No. 23-1.) As this Court "generally does not include such notifications of potential liability in notices to a proposed class," such information will not be required in *16 the notice in this case. *See Aytch*, 2018 WL 1784461, at *5 (citing *McFeeley v. Jackson St. Entm't, LLC*, No. DKC-12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012)).

**The parties shall confer and submit a joint proposed notice consistent with these determinations, within seven (7) days of the date of this Memorandum Opinion and Order.**

## CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Conditional Collective Action Certification and Court-Facilitated Notice (ECF No. 18) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to the conditional certification of a class consisting of "**all individuals who work or worked as an electrician or installer at Solar Energy World's Maryland facility and worked more than 40 hours in a workweek without being paid overtime.**" However, it is DENIED with respect to Plaintiffs' request that the time period for certification be based on the date of the filing of this case or the request for conditional certification. The conditional class will include those who matched the above description "**at any time from December 19, 2017 to present.**" The Motion is further GRANTED IN PART and DENIED IN PART as to the contents and manner of the proposed Notice. The parties shall be directed to confer and submit a joint proposed notice consistent with the determinations set forth herein. Defendants are directed to provide Plaintiffs with the names and last known home and email addresses and dates of employment of all collective action members within the next fifteen days. *17

A separate Order follows.

Dated: March 10, 2020

/s/ _____

Richard D. Bennett

United States District Judge

Lee v. Solar Energy World, LLC    Civil Action No. RDB-19-1993 (D. Md. Mar. 10, 2021)

 casetext

# EEOC (INQUIRY) NUMBER: 530-2021-02878

## Inquiry Information

### REASON(S) FOR CLAIM

**Date of Incident (Approximate):** 04/01/2021

**Reason for Complaint:** Religion, Disability

**Pay Disparity:**

**Location of Incident:** New Jersey

**Submission (initial inquiry) Date:** 04/13/2021

**Claim previously filed as charge with EEOC?** No

**Approximate Date of Filing:** N/A

**Charge Number:** N/A

**Claim previously filed as complaint with another Agency?** No

**Agency Name:** N/A

**Approximate Date of Filing:** N/A

**Nature of Complaint:** N/A

### INQUIRY OFFICE

**Receiving:** Philadelphia District Office

**Accountable:** Philadelphia District Office

### APPOINTMENT

**Appointment Date and time:** 06/29/2021 10:15 AM US/Eastern

**Interview Type:** Phone

### APPROXIMATE DEADLINE FOR FILING A CHARGE: 01/26/2022

### POTENTIAL CHARGING PARTY

**First Name, Middle Initial:** Jordan

**Last Name:** Breslow

**Street or Mailing Address:** 314 S Henderson Rd

**Address Line 2:** Unit G-103

**City, State, Zip:** KING OF PRUSSIA, PA, 19406

**Country:** UNITED STATES OF AMERICA

**Year of Birth:**

**Email Address:** jordanbreslow93@gmail.com

**Home Phone Number:** (215) 206-3562

**Cell Phone Number:**

## RESPONDENT/Employer

**Organization Name:** SOLAR ENERGY WORLD

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 5681 Main St

**Address Line 2:**

**City, State, Zip Code:** ELKRIDGE,MD, 21075

**County:** Howard

**Phone Number:** (410) 579-5178

## RESPONDENT CONTACT

**First and Last Name:** Stephanie Boyd

**Email Address:** jordanbreslow93@gmail.com

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:** 100 Twinbridge Dr

**Address Line 2:** Suite F/G

**City, State, Zip Code:** PENNSAUKEN, NJ, 08110

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled:** I have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** White,

**National Origin:** Other European

## Adverse Action(s)

On 4/1/2021 my direct supervisor, Will McColley verbally berated me from taking for the Passover ( A Jewish Holiday) holiday off (a Saturday 3/27/2021) and further berated for asking for and taking the next Saturday (4/3/2021) for a memorial service marking the one year passing of my mother. He further made comments about me having a nice car, a "Jewish Ride" and I heard him refer to it to a colleague when they thought I was out of earshot as a "perfect car for a kike".

On 4/12/2021 and 04/13/2021 my direct supervisor, Will McColley again verbally berated me for failing to make sales and when I referenced technology issues that stemmed from a mental/learning disability he berated me further and with malice.

## Supplemental Information

### What Reason(s) were you given for the action taken against you?

I feel victimized and my basic rights violated. I'm a decent person and to have to deal with a bigoted direct supervisor is not tenable.

### Was anyone in a similar situation treated the same, better, or worse than you?

Many sales advisor have left Solar energy World, the circumstances were not revealed to me. Jesse Berg left when I began and was spoken of in a negative way.

### Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

Sean Grieves - (267) 229-9337

### Please tell us any other information about your experience?

I have a well documented mental/learning disability. My faith is no secret. My direct supervisor has used both as tools of degradation and created a hostile work environment for me.

| | |
|---|---|
| **Are there any witnesses to any of the job actions taken against you? If yes, please provide their contact information and tell us what they will say.** | 1. Name: _Sean Grieves_   Job Title: _Solar Analyst_ <br> Email: _Sgrieves @ Solarenergyworld.com_   Phone: (267) 229-9337 <br> What will they tell us? _How degrading and verbally abusive_ <br> _Will McColley can be._ <br> 2. Name: _Jesse Berg_   Job Title: _Fmr. Solar Analyst_ <br> Email: _N/A_   Phone: (301) 333-0316 <br> What will they tell us? _How Mr. William McColley behaves in the_ <br> _workplace, his temper, etc._ |
| **Have you already filed a charge on this matter with the EEOC?** | Yes ☑   No ☐ <br> If yes:   Date you filed: _04/13/2021_ Charge Number: _530-2021-02878_ |
| **Have you filed a complaint on this matter with another agency?** | Yes ☐   No ☑ <br> If yes:   Agency name: _____ <br> Date you filed: ___/___/___   Complaint Number: _____ |
| **Do you have someone representing you in this matter?** | Yes ☐   No ☑ <br> If yes:   Attorney ☐   Union ☐   Other ☐ <br> Name: _____   Date of Contact: ___/___/___ <br> Email: _____   Phone: _____ |
| **Who can we contact if we are unable to reach you?** | Name: _Jonathan Breslow_   Relationship: _Father_ <br> Address: _1250 Greenwood Ave, Apt 619_ City: _Jenkintown_ State: _PA_ Zip Code: _19046_ <br> Email: _jonbreslow61@gmx.com_ Home Phone: (___) ___   Cell: (215) 480-1156 |
| **Privacy Act Statement** | This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are: 1) EEOC PRE-CHARGE INQUIRY, FORM 290A, ISSUED OCTOBER 2017. 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. §12117(a). 3) PRINCIPAL PURPOSE. The purpose of this form is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's assessment of your situation. It is not mandatory that this form be used to provide the requested information.  EEOC Pre-Charge Inquiry, Form 290A, issued October 2017. |

Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same basis as the EEOC's laws. **This Pre-Charge Inquiry is not a charge.** If you would like to file a charge of discrimination immediately, contact the EEOC office on the cover letter.  We recommend that you keep a copy of your completed Pre-Charge Inquiry and the Cover Letter for your records.

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| | |
|---|---|
| **What reason(s) were you given for this job action?** | Reason(s): _Poor Performance_ <br><br> Who told you this? _Stephanie Boyd_    His or Her Job Title: _HR Manager_ |
| **What is your job, previous job, or the job you applied for?** | Date Hired: _03 / 15 / 2021_ Job Title at Hire: _Solar Analyst_ <br> Annual Pay Rate When Hired _$24,600 (approx)_ Last or Current Annual Pay Rate: _Commission Based_ <br> Job Title at Time of Alleged Discrimination: _Solar Analyst_ <br> Date Your Employment Ended: _04 / 26 / 2021_ Select One: Quit ☐ Discharged/Laid off ☒ <br> Name and Title of your Immediate Supervisor: _William McColley_ <br> Job Applicants - What was the title of the job you applied for: _Solar Analyst_ <br> Date you applied: _02 / 26 / 2021_ Date you found out you were not hired: _/ /_ |
|  | **Was another person in the same or similar situation treated the same, better, or worse than you? EXAMPLES: Who else applied for the same job? Who else had the same attendance record? Who else had the same performance appraisal?** |
| **Who was treated BETTER than you?** | 1. Name: _Joe Brenner_    Job Title: _Solar Analyst_ <br> Email: _Jbrenner@solarenergyworld.com_ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☒ Sex ☐ National Origin ☐ Age ☐ Disability ☐ <br> How were they treated better? _Given more sales leads, not berated_ <br> _frequently_    Date: _/ /_ <br> 2. Name: _Sean Grieves_    Job Title: _Solar Analyst_ <br> Email: _Sgrieves@solarenergyworld.com_ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☒ Sex ☐ National Origin ☐ Age ☐ Disability ☒ <br> How were they treated better? _Given more sales leads, not_ <br> _berated frequently_    Date: _/ /_ |
| **See:** <br> **Who was treated WORSE than you?** <br> _Lee v. Solar Energy World_ | Name: ~~~~    Job Title: _____ <br> Email: _____ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ <br> How were they treated worse? _____ <br>     Date: _/ /_ |
| **Who was treated the SAME as you?** | Name: _N/A_    Job Title: _____ <br> Email: _____ Check how they are different from you: <br> Race ☐ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☐ Disability ☐ <br> How were they treated the same? _____ <br>     Date: _/ /_ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

| **Who do you think discriminated against you?** (continued) | How many employees (estimated) does the organization have at all locations?  Check one: |
|---|---|
| | Less than 15 ☐   15-100 ☑   101-200 ☐   201-500 ☐   More than 500 ☐ |
| | Where you work(ed), or applied to work, if different from the organization address above: |
| | Address: _100 Twinbridge Drive_____ Suite: _F/6_ |
| | City: _Pennsauken_   County: _Camden_   State: _NJ_   Zip Code: _08110_ |

| **Why do you think you were discriminated against?** | I think I was discriminated against because of: |
|---|---|
| | ☐ Race – Your race: _____ |
| | ☐ Color – Your color: _____ |
| | ☑ Religion – Your religion: _Jewish_____ |
| | ☐ Sex (including pregnancy, gender identity, or sexual orientation) |
| | ☐ National origin – Your national origin: _____ |
| | ☐ Age (40 or older) – Your age at the time of the adverse employment action: _____ |
| | ☑ Disability – Check all that apply: |
| |    ☑ I have a disability |
| |    ☐ I had a disability in the past |
| |    ☐ I don't have a disability but I am treated as if I have a disability |
| |    ☐ I am closely related to or associated with a person with a disability |
| | The disability involved: _Learning/mental Disability_ |
| | Is your employer aware of the disability? Yes ☑  No ☐ |
| | If yes, how? _Informed my direct supervisor, Will McColley, at the start of company training_ |
| | ☐ Genetic information, my family medical history, or my participation in genetic services like counseling, education or testing |
| | ☑ Retaliation – Check all that apply: |
| |    ☑ I filed a charge of job discrimination about any of the above |
| |    ☑ I contacted a government agency to complain about job discrimination |
| |    ☑ I complained to my employer about job discrimination |
| |    ☐ I helped or was a witness in someone else's complaint about job discrimination |
| |    ☑ I requested an accommodation for my disability or religion |
| | ☐ None of the above – The reason for this inquiry: _____ |

| **What happened to you that you think was discriminatory and when did it happen?** | EXAMPLES: I was denied an accommodation I needed to perform my job; I was fired because I was pregnant; I was laid off because of my age.  State the date the action happened. |
|---|---|
| | Date: _04/26/2021_  Action: _Terminated for bringing discriminatory practices to light._ |
| | Date: _04/13/202_  Action: _Denied Accommodation, see attached._ |
| | Name of Person(s) Responsible: _Stephanie Boyd (HR), Will McColley_ |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## PRE-CHARGE INQUIRY

| For Official Use Only – Inquiry Number: |
| --- |

Thank you for contacting the U.S. Equal Employment Opportunity Commission ("EEOC").  The information you give us on this Pre-Charge Inquiry (Form 290A) will help us assist you and determine if your concerns are covered by the employment discrimination laws we enforce.  Answer **all** questions completely and briefly.  Please write clearly.

After completing this Pre-Charge Inquiry, **return it immediately** to the EEOC office identified in the cover letter to this Pre-Charge Inquiry, or to the receptionist if you are completing this Pre-Charge Inquiry in an EEOC office.

**Please note: This Pre-Charge Inquiry is not a Charge of Discrimination.**

The Pre-Charge Inquiry is **not intended** for use by applicants for federal jobs or employees of the US government. See http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm for discrimination complaints in federal jobs.

| | |
| --- | --- |
| **Personal Information** | First Name: _Jordan_  MI: _I_  Last Name: _Breslow_ <br> Home Phone: (___) _____  Cell: (215) 205-3562  Email: _jordanbreslow-93@gmail.com_ <br> Address: _319 S. Henderson Rd_  Apt.: _G103_ <br> City: _King of Prussia_  County: _Montg._  State: _PA_  Zip Code: _19406_ <br> What is the best way to reach you? _Email_ <br> What are the best days and times to reach you? _M-F, 9am to 5pm_ <br> Do you need language assistance? Yes ☐ No ☑ <br> If so, what do you need? _____ <br> Date of Birth: _07/02/1993_  Sex:  Male ☑  Female ☐ <br> General information about you that will allow us to serve all individuals better: <br> i.  Are you Hispanic or Latino? Yes ☐   No ☑ <br> ii.  What is your race? Choose all that apply:  American Indian or Alaskan Native ☐    Asian ☐ <br> Black or African American ☐    Native Hawaiian or Other Pacific Islander ☐    White ☑ <br> iii.  What is your National Origin or ancestry? _Ashkenazi Jewish_ |
| **Who do you think discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐ <br> Organization Name: _Solar Energy World_ <br> Address: _5681 Main Street_  Suite: _____ <br> City: _Elkridge_  County: _Howard_  State: _MD_  Zip Code: _21075_ <br> Name of Human Resources Director or Owner: _Stephanie Boyd_ <br> Email: _sboyd@solarenergyworld.com_  Phone: (410) 579-5178 |

**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Issued October 2017.

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL
## WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**CHARGE OF DISCRIMINATION**

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| | |
|---|---|
| **Personal Information** | First Name: Jordan   MI: T   Last Name: Breslaw<br>Address: 314 S. Henderson Rd   Apt.: G103<br>City: King of Prussia   County: Montgomery   State: PA   Zip Code: 19406<br>Phone: 215-206-3562   Home ☐ Work ☐ Cell ☑   Email: jordanbreslaw93@gmail.com |
| **Who do you think discriminated against you?** | Employer ☑   Union ☐   Employment Agency ☐   Other Organization ☐<br>Organization Name: Solar Energy World<br>Address: 5681 Main Street   Suite:<br>City: Elkridge   State: MD   Zip Code: 21075   Phone: 866-856-4586 |
| **Why you think you were discriminated against?** | Race ☐   Color ☐   Religion ☑   Sex ☐   National Origin ☐   Age ☐<br>Disability ☑   Genetic Information ☐   Retaliation ☐   Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | Date of most recent job action you think was discriminatory: 4/26/2021<br>Also describe briefly each job action you think was discriminatory and when it happened (estimate).<br>4/26/2021 – Wrongful Termination<br>4/16/2021 to 4/25/2021 – Reliatory character impeachment under the guise of an "investigatory leave"<br>4/13/2021 – Disability Discrimination, verbal beratement<br>4/12/2021 – Disability Discrimination, Verbal beratement<br>4/1/2021 – Religious Discrimination, verbal beratement –4/2/2021 |
| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC. I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>I declare under penalty of perjury that the above is true and correct.<br>Signature:   Date: 5/18/2021 |

Additionally, Stephanie Boyd (HR Manager) has my response, in writing and shall on file, to my termination.

I afforded myself the protections of an EEOC inquiry and removed myself from a hostile work Environment where I did feel safe or comfortable. From 4/13/2021 on.

Solar Energy world response was reliatory, creating bogus "poor performance" claims and terminated me wrongfully and without case. With my EEOC Inquiry/complaint still open and unresolved.

I await my interview.

Jordan Bresh



SolarEnergyWorld
*Because Tomorrow Matters*

COPY

April 16, 2021

**VIA FEDEX**
Mr. Jordan Breslow
314 S. Henderson RD
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

Re:    Investigatory Leave
       PRIVILEGED AND CONFIDENTIAL

Dear Mr. Breslow:

This letter is to inform you that you are being placed on investigatory leave, effective immediately, for all purposes and from your position with Solar Energy World, LLC ("SEW").

## A.    INVESTIGATORY LEAVE

SEW will be investigating various issues described herein, including, but not limited to, incidents related to reports of gross misconduct and dereliction of your primary job duties. SEW cannot permit you to continue performing work, engaging with co-workers, and interacting with homeowners (all required aspects of your position) until it has had the opportunity to investigate these and any related matters. If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, including terminating your services, during the investigatory leave.

## B.    GENERAL DESCRIPTION OF ALLEGED CONDUCT

The general basis for your placement on leave is the Performance Related Issues described below.  This investigation is in its initial stage, and the basis may change or modify as the investigation continues.  SEW has not made any determination with regard to any of the below allegations, and is only investigating these issues at this stage.

**Performance Related Issues:**

1. Your employment commenced on March 15, 2021.
2. You were scheduled to attend a mandatory meeting on April 12, 2021 at 9:00 a.m.  At approximately 8:57 a.m., three minutes prior to the meeting start time, you communicated that you would not attend the meeting.

Mr. Jordan Breslow
April 16, 2021
Page 2 of 5



3. Since April 13, 2021, SEW has been generally unable to establish communication with you. Indeed, it is believed that you may have abandoned your position as of April 13.

4. On April 14, 2021, you failed to attend a weekly sales meeting. Your supervisor, Will McColley, was unable to contact you, and you did not respond to his message.

5. As a Solar Analyst, handling and carrying out sales leads is the primary duty of your job. You had a sales lead scheduled for April 14, 2021 at 5:00 p.m. When Mr. McColley was unable to establish communication with you, Mr. McColley attempted to confirm and handle the lead himself. Ultimately, the lead was lost, which appears largely attributable to your failure to communicate. This may have resulted in a significant financial loss to the company byway of losing the sale of a residential solar system to a homeowner.

6. On April 15, 2021, another significant sales lead issue arose. The customer has reported to SEW that an in-home sales meeting was confirmed, that then you attempted to change it to a virtual-meeting, and that you then never followed up any further. This lead appears to have now been lost which, again, may have potentially caused a significant financial loss to the company byway of losing the sale of another residential solar system.

Points 1-6, above, are collectively referred to herein as "Performance Related Issues."

**Investigation of EEOC Inquiry**

<u>Equal Opportunity Employer</u>: SEW is an equal opportunity employer and is committed to equal opportunity without regard to an employee's actual or perceived race, religion, color, sex (including pregnancy), age, ancestry, national origin, citizenship, disability, marital status, sexual orientation, gender identity, genetic information, or any other basis of discrimination prohibited by applicable local, state or federal law. This policy applies to all terms and conditions of employment, including, but not limited to, the following: (1) recruitment, hiring, placement, transfer, promotion, and demotion; (2) training and development; (3) compensation and benefits; (4) educational, social and recreational programs; (5) discipline; and (6) termination of employment. Employment decisions, subject to the legitimate business requirements of SEW, are based solely on an individual's qualifications, merits, behavior and performance.

<u>Americans with Disabilities Act</u>: SEW also complies with the Americans with Disabilities Act (ADA), as well as state and local laws, in ensuring equal employment opportunities for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis. Qualified individuals with disabilities are entitled to be treated equally

Mr. Jordan Breslow
April 16, 2021
Page 3 of 5



with other employees in terms of pay, benefits, and other forms of compensation (or changes in compensation), as well as in opportunities, assignments, classifications and position descriptions. SEW is also committed to not discriminating against any qualified employees or applicants because they have a history of having a disability, are related to or associated with a person with a disability, or are regarded as having a disability.

<u>Policy Against Retaliation</u>: Any employee, who, in good faith, files a complaint or participates in a related investigation, may not be subjected to reprisal or retaliation as a result of filing the complaint or participating in the investigation. Those involved in investigating the incident will make every effort to strike a balance between the parties' desires for privacy and the need to conduct a fair and effective investigation. Violation of the EEOC or ADA policies described above may subject the violating employee to disciplinary action, up to and including termination. Likewise, there may be disciplinary measures or termination if, in fact, it is determined that the reported incident and/or accusations were fabricated.

<u>Your EEOC Inquiry</u>: On or about April 15, 2021, you sent a FedEx package to SEW containing the following:

1. 5-page document with a submission date of 4/13/2021 and entitled "EEOC (INQUIRY) NUMBER: 530-2021-02878";
2. 2-page document dated 4/13/21 and entitled "Your Appointment is Scheduled"; and
3. 32-page document, marked "confidential," entitled "Report of Psycho-Educational Evaluation," and which appears to be from on or around June of 2010 and from the time you were 16 years old.

The documents described above are collectively referred to as "EEOC Inquiry."  Prior to receipt of the EEOC Inquiry, SEW is unaware of previously receiving any other information, complaints, or concerns from you relating to any of the issues described therein.

In your EEOC Inquiry, you assert allegations relating to your supervisor, including allegations that you believe he discriminated against you on the basis of religion and disability.  SEW takes your EEOC Inquiry seriously.  Your EEOC Inquiry will be reviewed and we anticipate that we will contact you in order to obtain additional information.  In the interim, please direct all correspondence and inquires relating to the EEOC Inquiry to Stephanie Boyd, Director of Human Resources (sboyd@solarenergyworld.com).

In your EEOC Inquiry, you allege that the illegal actions begun on April 1, 2021, approximately two-weeks after your employment begun.  As noted, your EEOC Inquiry (received on April 15,

Mr. Jordan Breslow
April 16, 2021
Page 4 of 5



2021) was the first notice SEW received of any of the concerns described therein.  In addition, it appears that immediately after submitting your EEOC Inquiry on or about April 13 with the EEOC, you discontinued performing all of your required job responsibilities and ceased communicating with your supervisor (despite his multiple attempts to contact you).  *See* Performance Related Issues, described above.

C.      **DURING INVESTIGATION**

During the investigatory leave period, you: (1) are relieved of all of your duties at SEW and shall not perform any work; (2) are not permitted to enter SEW offices; (3) may not communicate with any employees, customers, potential customers, leads, vendors, sales representatives, or subcontractors of SEW; (4) may not access work email or systems; and (5) may not engage in any conduct intended to interfere with SEW's investigation.

SEW will endeavor to promptly compete this investigation by approximately **April 26, 2021.** However, due to the seriousness and potential complexity of this matter, your investigatory leave may be extended at SEW's discretion and as necessary.

**SEW requests that you make yourself reasonably available during your leave in order to participate in any investigative interviewing that may be requested and to ensure SEW can complete its investigation in a timely manner.  SEW may email you a written questionnaire to complete and provide additional information on the issues described herein.  If you do not make yourself available or respond to SEW's emails, SEW will proceed with the investigation and make a determination based on the information available.**

At the commencement of this leave, you must immediately return all SEW property, including: (1) company computer; (2) company phone; (3) other company electronic equipment; (4) keys; (5) company files; (6) company records; and (7) any other similar or related SEW property that is in your possession. You are instructed to not delete any emails, text messages, documents and/or other relevant materials created during your time as an SEW sales representative.

You will be paid through today (despite a concern that you abandoned your position as of April 13). However, because you are under review for Performance Related Issues that potentially constitute gross misconduct, your leave will be without pay. If the investigation does not indicate disciplinary action is warranted and you agree to return to your prior position, then you will be paid for the time missed while on investigatory leave.  If the investigation indicates that disciplinary action is warranted, SEW reserves the right to take further corrective action, up to and including termination, during the investigatory leave.

Mr. Jordan Breslow
April 16, 2021
Page 5 of 5

*/ COPY*

We appreciate your cooperation in this matter and hope that the situation will be resolved in a manner that is satisfactory to all parties involved.

**Solar Energy World, LLC,** *by*:

_____          _Stephanie Boyd_          04/16/2021
Mr. Jordan Breslow                Date          Signature                              Date
**NOTE: Your signature only confirms your receipt of**
**this letter, not your agreement to its contents.**

          Stephanie Boyd
          Printed Name

 **Solar**Energy**World**
*Because Tomorrow Matters*

⌈ **COPY**

April 27, 2021

Mr. Jordan Breslow
314 S Henderson Road
Unit G-103
King of Prussia, PA 19406

**VIA EMAIL**
Jordanbreslow93@gmail.com

Re:   Notice of Termination
<u>PRIVILEGED AND CONFIDENTIAL</u>

Dear Mr. Breslow:

As you know, you were placed on investigatory leave on April 16, 2021 by Solar Energy World, LLC ("SEW"). SEW has completed its investigation and identified various instances of misconduct, including, but not limited to, insubordination, failure to perform job duties, failure to communicate, and/or job abandonment. Accordingly, your employment with SEW is being terminated, effective immediately.

A Form W-2 will be mailed to your home address in the normal course. If you need to report a change of address, please contact the human resources office.

If you should have any questions, please do not hesitate to contact me.

Sincerely,

Stephanie Boyd
Director of Human Resource

**Employee Signature:** _____
(Acknowledges Receipt Only)                            **Date**

**Employee Comments:**_____

_____

_____

**(Additional comments may be added on separate paper.)**

**Affidavit**

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF MONTGOMERY

The undersigned, MATTHEW WARDEN, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the Commonwealth of Pennsylvania. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.

3. Jordan Breslow discussed with me frequently in April 2021 the issues and discriminatory actions he was suffering in this employment with Solar Energy World. He discussed his direct supervisor and some co-workers in detail. Having known him for many years I'm familiar with his learning/mental disability and his religious background. As a working professional and an aspiring law student, I was frankly appalled at the accounts that Jordan relayed to me. I could plainly see the effects of this work environment on this mental state and quality of life. I will make myself available, if necessary, for further interviews and sworn statements.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this _14_ day of _June_, 20_21_.

Matthew Warden

## NOTARY ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA, COUNTY OF MONTGOMERY, ss:

On this _14th_ day of _June_ , _2021_, before me, _Rafeek T. McEachin_ personally appeared Matthew Warden, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within Affidavit, and, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.

In witness whereof I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rafeek T. McEachin, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires Oct. 10, 2021
Member, Pennsylvania Association of Notaries

_____
Notary Public

_Notary_
Title (and Rank)

My commission expires _10/10/2021_

Notary Address:
_1735 Market St_
_Suite A_
_Philadelphia PA_
_19103_

**Re: Question 1**

The format and setting of the meeting were virtual. I had a bad case of diarrhea and was frequently making trips to the bathroom. I did my best in my condition (I was ill) to inform my supervisor that I could not attend a virtual meeting. I did inform him before the start of the meeting. See below:



## Re: Question 2

I was quite frankly in a state of upheaval. The weight of all the traumas inflicted on me by my supervisor had become too much to bear and I felt my only option upon advice from friends and family was to contact the EEOC and file a complaint. Additionally, an organizational chart was never provided to me, to the best of my knowledge, and Geoff Mirkin's role was not abundantly clear to me. Not that I was in the state to talk to anyone at Solar Energy World. The only option I felt that was left open to me was to seek the protections and assistance of the EEOC in this matter. I felt so victimized by my supervisor, all of SEW felt unsafe.

FILE COPY

CONFIDENTIAL

## Re: Question 3

I refer you back to my answer to Question 2. I would like to further add that these assertions of "significant financial loss" and "gross misconduct" both mentioned in this document and in the previous one I signed are intentional overestimations designed in a retaliatory sense to smear my character. After reviewing the Cornell law library online, the definition of gross misconduct includes things like employee theft and significant financial loss is also a strong term. Nothing of that sort occurred here. These terms are being deliberately misused to indict my character. After April 13th 2021, the date of my EEOC complaint and according to my reading of employment law, I had the right to remove myself from situations that I deemed unsafe and that I had made the appropriate regulatory authorities aware of.

CONFIDENTIAL

FILE COPY

**<u>Re: Question 4</u>**

I did not attend the meeting because I did not feel safe in my supervisor's presence. I wrote a formal letter to HR manager Stephanie Boyd and included the EEOC materials. This letter was dated April 14th 2021, and was sent via FedEx and is traceable. Once again given that it was after April 13th 2021, the protections afforded me under an EEOC complaint allow me to remove myself from situations in which I do not feel safe.

CONFIDENTIAL



## Re: Question 6

As I will expand on later Mr. McColley's verbal abuse and the like, in my estimation, was escalating. I can only deal with things as I perceive them, and I did not wish to be continually verbally abused. I also have to assume that if things were escalating my very physical safety at some point might become at risk. There really was nobody to report this to at SEW. Human Resources is not housed on site in the Pennsauken NJ office, it's in Elkridge MD and my direct supervisor was Mr. McColley. How do you report abuse to your abuser? Additionally, I did report it to friends and family. Not to put too fine a point on it but you are talking about somebody who resorted to bigotry and hate in describing me. I was supposed to feel safe in the presence of somebody that used a racial slur to describe me? Someone who yelled at me and debased me, I was supposed to feel safe around that?

CONFIDENTIAL

FILE COPY

**Re: Question 7**

I am not here to give a history lesson, but I am a Jew. And I am proud of that. I have learned in my limited time on earth that when people reveal their true colors you have every right to be afraid. Mr. McColley used a vile word to describe me when he thought I was not listening, or I could not hear. As I stated in my prior answers, the only person it seemed to me to report this to would be Mr. McColley. Additionally, I was just shocked at what I had endured both in verbal abuse and in the bigotry, I felt hanging in the air. I cannot honestly think there is anybody who would want to return to an environment where they felt abuse against them was escalating and it had a prejudice behind it. Additionally, I have a documented learning disability and Mr. McColley had thrown that into his tirades of abuse. How much is a person expected to take? I felt attacked from every direction. I did not feel safe being put on leave because it had an air of retaliation behind it. SEW seemed to be concocting issues of performance in an attempt to smear me and thereby discredit me as well. I have overcome a lot in my life in terms of my disabilities and I am proud of how far I've come. There were people who told me I would not graduate college and people told me I would not graduate high school. I felt that that whole letter about my leave dated Friday April 16th 2021 was not designed in an effort to resolve the situation but intimidate me.

CONFIDENTIAL



FILE COPY

TOPIC 1: "On 4/1/2021 my direct supervisor, Will McColley verbally berated me from taking the

Passover (A Jewish Holiday) holiday off (a Saturday, 3/27/2021)"

    a.  With regard to Mr. McColley berating you, where did this occur?

       **-To my best recollection over the phone.**

b. Are there any other individuals with information about this incident?

    **-I told my fellow solar analyst Sean Grieves that Mr. McColley was extremely hard on me verbally and that I was alarmed at the vitriol given my religious affiliations.**

c. Was anyone else present when this occurred?

    **-No**

d. Did you tell anyone about this incident?

    **-My father and my good friend Matt Warden. Mr. Warden is of unimpeachable character he is a computer technology coordinator, graduate of the University of Pennsylvania, and soon to be attending the University of California Davis law school.**

e. Did you inform any supervisor of SEW of this incident?

    **-My supervisor was the offending party.**


CONFIDENTIAL

CONFIDENTIAL


FILE COPY